**Brenda PHILLIPS, Plaintiff-Appellee,**

v.

**SMALLEY MAINTENANCE SERVICES, INC., a corporation, and Ray Smalley, individually, Defendants-Appellants.**

**No. 81–7715.**

United States Court of Appeals, Eleventh Circuit.

Aug. 15, 1983.

---

Redden, Mills & Clark, William H. Mills, Birmingham, Ala., for defendants-appellants.

Floyd, Keener & Cusimano, Michael L. Roberts, Greg Cusimano, Gadsden, Ala., for plaintiff-appellee.

Before FAY and KRAVITCH, Circuit Judges, and YOUNG *, District Judge.

KRAVITCH, Circuit Judge:

This is an appeal from a judgment for appellee in an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and two pendent state law claims, battery and tortious invasion of the right of privacy. After having certified questions pertaining to the state law claims to the Supreme Court of Alabama, we affirm the district court judgment of liability on all claims.

*Facts*

Appellee, Brenda Phillips, was formerly employed by appellant, Smalley Maintenance Services, Inc. [SMS]. SMS and the president and principal owner of SMS, appellant Ray Smalley [Smalley], were found by the trial judge, after a special advisory verdict by the jury, to have wrongfully discharged appellee in violation of Title VII for her refusal to engage in sexual activities with Smalley. On this claim, appellee was awarded lost wages of $2,666.40. The

* Honorable George C. Young, U.S. District Judge for the Middle District of Florida, sitting by designation.

trial judge also found that Mrs. Phillips had been subjected to actionable sexual harassment prior to the wrongful discharge, but that no actual damages arose from this Title VII violation. Pursuant to an exercise of pendent jurisdiction, the jury found that on one occasion Smalley had touched Phillips without her consent in an angry, hostile or offensive manner and awarded her $10.00 as nominal damages for common law battery. The jury also found that Smalley had wrongfully intruded into Phillips' private activities so as to cause outrage or mental suffering, shame or humiliation to a person of ordinary sensibilities. Compensatory damages of $25,000 were awarded on this Alabama state law "invasion of privacy" claim.

Appellee began working as an "overhead cleaner" for appellants SMS and Smalley on July 30, 1979. SMS provided cleaning, janitorial and other miscellaneous services at a Monsanto plant in Marshall County, Alabama. Appellee was transferred between jobs of various descriptions, primarily on her request, to avoid sexually oriented discussions with male co-workers. Appellants introduced evidence that in fact appellee initiated these conversations. Other SMS employees were also moved from position to position by the employer.

At trial appellee testified that within a few weeks of beginning her job Smalley called her into his office and locked the door. He questioned her about how she was getting along with her husband and told her his wife was ill. The conversation ended when appellee said she must return to work. A few days later he again called her into his office, locked the door and this time inquired how often Phillips and her husband had sex and "what positions" they used. Appellee told appellant it was none of his business and left the office. This form of intrusive interrogation continued two to three times a week. On repeated occasions, calling appellee away from her work, into his office and locking the door, appellant asked her whether she had ever engaged in oral sex. At one time Smalley invited appellee to have a drink with him on a Saturday. She refused. In later conversations he insisted that she engage in oral sex with him on penalty of losing her job, upon which he knew she and her family were significantly, financially dependent. She consistently resisted his advances. Shortly before the termination of appellee's employment, she was again called into appellant's office. Appellant showed anger toward appellee, beating on his desk, and insisted that she engage in oral sex with him at least three times a week. He then began to cover the window in the office door with paper to prohibit anyone from seeing inside. Appellee forced her way out of the office. As she was leaving, appellant hit her "[a]cross the bottom" with the back of his hand. Appellee testified that this treatment made her nervous and unable adequately to perform her work.

On October 23, 1979, Smalley once more called appellee into his office and asked her if she was going to show her gratitude to him for hiring her by engaging in the afore-suggested sexual acts. Appellee again refused. She testified that she was already upset by virtue of having learned the day before that she was possibly going to have surgery. Returning to her work after the incident with Smalley she "tried to work, and I got so upset that I couldn't." She told her supervisor and Smalley that she was going home early. Smalley asked for her gate pass; she would not give it to him and said she was not quitting the job. The next day her gate pass would no longer work to admit her to the plant. She then went to see an attorney, returned to the plant, talked to Smalley on the phone and he brought her pay check to her. At that time appellee asked Smalley why she had been fired. He said she had not been fired but was "laid off" because the work for which she was hired was completed. When testifying at trial, appellant made it clear that even if appellee were only "laid off" he had no intention of calling her back if more work were available. The distinction be-

tween "laying off" and "firing" in his mind was relevant only to the terminated employee's ability to collect unemployment benefits.

Evidence in the record indicates that all other persons hired at the same time and for the same job as appellee, except one who voluntarily left, were kept on the payroll in various capacities until May, 1980 when the Monsanto plant closed. Other persons were hired soon after Phillips' termination for positions she was qualified to fill and for which she had indicated an interest. Smalley admitted at trial that Phillips was not terminated because of any allegedly poor work performance but contended that appellee's position had been designated temporary from the beginning and the work for which she was hired was then completed.

The testimony of a family practice physician and of a psychiatrist was introduced at trial, to the effect that Phillips experienced chronic anxiety in the months following her termination from SMS. She underwent treatment and was placed on medication. According to her husband, she had contemplated suicide and her relationships with family and friends were disrupted. In addition, she experienced physical problems, basically unrelated to her termination, resulting in surgery. The medical experts treating appellee testified that the anxiety was, in their expert opinion, related to the events surrounding her termination and was not caused by her physical problems.

During this post-termination period, appellee filed a complaint with the Equal Employment Opportunity Commission [EEOC], alleging that her termination constituted sex discrimination in violation of Title VII because it resulted from her refusal to engage in oral sex with Smalley. She alleged that the treatment to which she was subjected prior to termination had also violated Title VII. On July 30, 1980 the EEOC issued a "Notice of Right to Sue." This lawsuit was timely filed in the Northern District of Alabama.

## A. Non-Pendent Claims

Appellants claim that "sexual harassment" does not constitute an unlawful employment practice in violation of 42 U.S.C. § 2000e–2 and, thus, that the facts of this case do not support a cause of action under Title VII. Appellants also claim that there was insufficient evidence to support a finding that appellee was discharged for sexually discriminatory reasons rather than for the reason asserted by appellant: that the job was temporary and had terminated. An additional contention is that the complaint filed in this case varied from the EEOC complaint to such an extent that the condition precedent to suit, issuance of a "Notice of Right to Sue," technically was not satisfied.

Appellants contend, too, that the award of attorneys' fees, pursuant to 42 U.S.C. § 2000e–5(k), of $7,500 was excessive and unsupported by the evidence.

Next it is argued that the district court abused its discretion in exercising pendent jurisdiction over the state law claims. In addition, appellants assert that the trial court erred in allowing a female former employee to testify that she had been subjected to treatment from Smalley quite similar to that alleged by appellee.

Appellants raise other miscellaneous evidentiary claims and contend that, overall, they were denied a fair trial.

We will address each of the arguments in turn.

### Title VII Cause of Action

■ Appellants argue that "sexual harassment" of a female employee by a male employer does not constitute discrimination based on sex and is not an unlawful employment practice under 42 U.S.C. § 2000e–2. This argument is now conclusively foreclosed by this court's recent decision in *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1981).

In *Henson* the court held that where sexual harassment is "sufficiently pervasive so

as to alter the conditions of employment and create an abusive working environment," *id.* at 904, a Title VII claim is made out "irrespective of whether the complainant suffers tangible job detriment." *Id.* at 901. The *Henson* court identified five elements that a plaintiff must allege and prove to establish a Title VII violation based on sexual harassment where there is no tangible job detriment. In cases such as the instant one, where the employer was himself the one allegedly subjecting the employee to harassment so that there is no issue of *respondeat superior,* only four elements are relevant: (1) the employee belongs to a protected group, (2) the employee was subject to unwelcome sexual harassment, (3) the harassment was based upon sex, and (4) the harassment complained of affected a "term, condition, or privilege" of employment. *Id.* at 903–04. In this case the record reveals Mrs. Phillips sufficiently pleaded and proved that (1) as a female she is a member of a protected class, (2) she was subject to unwelcome sexual harassment, (3) "but for the fact of her sex, she would not have been the object of harassment," *id.* at 904, and (4) the harassment affected a term, condition or privilege of employment. As stated in *Henson,* "the state of psychological well-being is a term, condition, or privilege of employment within the meaning of Title VII." *Id.* at 904, citing with approval, *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972).

Where there is tangible job detriment, such as wrongful "discharge of any individual," 42 U.S.C. § 2000e–2(a)(1), a Title VII cause of action based on sexual harassment is made out when a plaintiff proves the first three elements of a sexual harassment claim, stated above, and also pleads and proves that she applied for and was qualified for a position which the employer was seeking to fill; despite her qualifications she was rejected for the position; and, after her rejection, the position remained open and the employer accepted applications from persons with the complainant's qualifications. *Id.* at 911 n. 22. In addition to satisfaction of the first three elements,

Phillips adequately proved that she made known her interest in other positions with SMS, including a daytime janitorial position, and that these positions were filled by others with her same qualifications subsequent to her termination. Appellee, therefore, has proven all the necessary elements of a case of sexual harassment resulting in tangible job detriment.

*Henson* thus controls and Title VII claims were properly stated both as to sexual harassment during appellee's tenure and the wrongful termination resulting from the harassment.

*Sufficiency of the Evidence*

■ Appellants claim that there was insufficient evidence to support the finding that appellee was discharged for sexually discriminatory reasons rather than for the legitimate, nondiscriminatory reason that the job was temporary and the work was completed. This court may not set aside the district court's finding of discriminatory purpose unless it is clearly erroneous. *Pullman-Standard v. Swint,* 456 U.S. 1781, 102 S.Ct. 1781, 1788–89, 72 L.Ed.2d 66 (1982). *See also Bundy v. Jackson,* 641 F.2d 934, 950 (D.C.Cir.1981). The record is replete with evidence that out of all comparable employees only appellee was complaining of sexual harassment at the time of her dismissal, only appellee was terminated at this time, and others with appellee's same qualifications were hired immediately before and after termination. The evidence provides no basis for finding that the trial court's finding that appellee was terminated because of her refusal to engage in sexual activities with appellant was clearly erroneous.

*Variance Between EEOC and Judicial Complaints*

■ Appellants' brief contention that there is a fatal variance between the Title VII judicial complaint and the EEOC complaint and right to sue letter borders on the absurd. In the EEOC complaint appellee

alleged that she was terminated for failure to engage in "oral sex." Her complaint in federal court alleged that she was fired for refusal to engage in "sex." The former Fifth Circuit has held that the judicial complaint "'may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission.'" *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970), *quoting King v. Georgia Power Co.*, 295 F.Supp. 943, 947 (N.D.Ga. 1968).[1] We refuse to accept that "sex" is not significantly "related to" "oral sex." The charges stated in the judicial complaint could reasonably be expected to have been addressed by any EEOC investigation based on the administrative complaint. *See id.* at 466. The scope of the EEOC complaint should not be strictly interpreted, *id.* at 465, "to allow procedural technicalities to bar claims under the Act." *Gamble v. Birmingham Southern Railroad Co.*, 514 F.2d 678, 688 (5th Cir.1975). *See also Ostapowicz v. Johnson Bronze Company*, 541 F.2d 394 (3d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). Any variance between appellee's EEOC and judicial complaints was inconsequential.

*Attorneys' Fees Award*

■ In reviewing the award of attorneys' fees to determine whether it was excessive and unsupported by the evidence, we must decide whether the trial court abused its discretion in awarding the $7,500. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974). Appellee's attorneys filed an itemized fee petition, which was verified by testimony at a separate hearing on the attorneys' fees issue. Ap-

pellee sought an award of $14,407.40. The petition presented the total hours and an itemization of the time spent by the two attorneys, and requested an hourly rate of $90.00 for Mr. Cusimano's time and $75.00 for Mr. Roberts' time.

At the hearing, the court and appellant's counsel inquired into the breakdown of hours between the Title VII and the state law claims. The court inquired, also, into each of the relevant factors which under *Johnson, supra* must be considered.[2] Appellants imply that since some of the time spent in pursuing the Title VII claims is inseparable from the time required to bring the state law claims no recovery of attorneys' fees for that time is allowable. This argument is unpersuasive. The petition and testimony support a finding that the time in dispute would have been spent whether or not the state claims existed.

The record shows that appellee had entered into a flexible, forty percent contingent fee agreement with her attorneys as to the state law claims. This agreement did not apply to any recovery under the Title VII claims. Thus, contrary to appellants' suggestion, *Johnson* does not compel that the attorneys' fee award be limited to forty percent of the Title VII recovery. *Cf. Johnson*, 488 F.2d at 718 (in no event can the award of attorneys' fees under Title VII exceed the fee the party had contracted to pay counsel).

■ The fact that the attorneys' fees award is larger than the back pay award in a Title VII action does not necessarily indicate an abuse of discretion. "Although the amount of back pay awarded may be con-

---

1. The decisions of the former Fifth Circuit decided prior to October 1, 1981, were adopted as precedent in this circuit in an en banc opinion, *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

2. The factors the court in *Johnson* set forth as guidelines in determining a proper award of attorneys' fees are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill required to perform the legal service properly, (4) the preclusion of oth-

er employment by the attorney due to acceptance of the case, (5) the customary fee in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or other circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

sidered in fashioning an attorneys' fees award, the court must also consider the impact the case will have on the law and on other affected persons." *Taylor v. Jones,* 653 F.2d 1193, 1206 n. 12 (8th Cir.1981), citing *Johnson v. Georgia Highway Express,* 488 F.2d at 718. At the time this case was tried, this court had yet to decide *Henson.* Thus, appellee's attorneys were working to establish a rule, then unenunciated in this circuit, that sexual harassment is an unlawful employment practice under 42 U.S.C. § 2000e–2. Some added compensation for this effort was reasonable.

▮ Considering the novelty of the Title VII issue presented in this action, the trial court's careful consideration of all of the *Johnson* factors, and the probe into the intertwined nature of the Title VII and state law claims, the court below did not abuse its discretion in awarding $7,500 in attorneys' fees, an amount substantially less than that requested by the appellee's attorneys.[3]

*Exercise of Pendent Jurisdiction*

▮ Next in this litany of asserted errors is appellants' argument that the district court abused its discretion in exercising pendent jurisdiction over the state law claims. The two-pronged test of *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)[4] must be applied to decide the propriety of pendent jurisdiction. Clearly the district

court had the *power* to hear the state law issues. The federal Title VII claim was one of substance, evidenced in large part by the fact that plaintiff prevailed, *cf. Warehouse Groceries Management, Inc. v. Sav-U-Warehouse Groceries, Inc.,* 624 F.2d 655, 659 (5th Cir.1980) (even where federal issues decided against plaintiff, the federal claims are not necessarily unsubstantial), and all claims arose out of the same set of operative facts.

▮ Appellants allege only that the exercise of that power in this case constituted an abuse of discretion. "[I]t is unusual for a court to decline to exercise [the] power [to hear pendent claims] where it exists .... '[A]lthough there are cases in which courts have used their discretion to refuse to hear a pendent claim, these are exceptional and ordinarily the power is exercised if it is found to exist.'" *Jackson v. Stinchcomb,* 635 F.2d 462, 472 (5th Cir.1981), *quoting* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567, pp. 455–56 (1975). A refusal to exercise pendent jurisdiction in this case would have required substantially duplicative proceedings in federal and state courts. Witnesses would have been forced to testify twice to the same facts. Overall, the "considerations of judicial economy, convenience and fairness to litigants" as well as to other participants justified the exercise of pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. Accordingly, there was no abuse of discretion.

---

**3.** Although more detailed findings as to the distribution of time between the Title VII and state law claims would be helpful in analyzing the propriety of the award, the court in *Johnson* emphasized "we do not attempt to reduce the calculation of a reasonable fee to mathematical precision. Nor do we indicate that we should enter the discretionary area which the law consigns to the trial judge." 488 F.2d at 720.

**4.** The two prongs of the *Gibbs* test are (1) the existence of power to hear the state claims and (2) the proper use of the discretion to exercise that power in the instant case. In determining power to hear the claims "[t]he federal claim must have substance sufficient to confer sub-

ject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact.... [i]f ... a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues there is *power* in federal courts to hear the whole." 383 U.S. at 725, 86 S.Ct. at 1138 (citation and footnote omitted). As to the proper exercise of discretion, the court must keep in mind that "[the doctrine's] justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims ...." *Id.* at 726, 86 S.Ct. at 1139.

**1532**

*Evidentiary Claims*

■ Appellants raise challenges to the admission of several items of testimony by the court below. First they contend that the testimony by another female former employee of appellant, that she had been subjected to treatment similar to that which appellee alleged, was irrelevant. We disagree. The trial court took care to preface the testimony with an instruction that the testimony was relevant only to appellant Smalley's reasons for terminating Mrs. Phillips. This evidence was properly admitted under Fed.R.Evid. 404(b) to prove appellant's "motive ... intent ... [or] plan ...."

■ Next appellants argue that allowing appellee's testimony that at the time of her employment she was making payments on a new house, which was later lost due to inability to make those payments, was irrelevant and prejudicial. As is revealed in the testimony, Smalley knew of appellee's economic vulnerability based on her need to make these payments and used this in attempting to persuade her to perform the sexual acts. The evidence was admissible to prove appellant's "motive, opportunity, intent" in threatening appellee with losing her job. Fed.R.Evid. 404(b).[5]

■ Appellants' challenge to the relevance of medical testimony is rejected for the reasons set forth by the Supreme Court of Alabama in its response to the final question certified thereto. *See* text *infra,* at 1537.

B. *Pendent Claims*

■ A broadly based challenge to the existence under Alabama law of a cause of action for tortious invasion of the right of privacy also is raised by appellants. It is in reference to this claim that we certified questions to the Alabama Supreme Court. The questions asked and the answers received are set forth below. The Alabama court has spoken clearly and unanimously. There can be no doubt that the award of $25,000 for invasion of the privacy rights of appellee was appropriate under the law of the State of Alabama. Each of appellants' attacks to this award are without merit.

*Conclusion*

Accordingly we AFFIRM the judgment of the district court on all claims and set forth below the Alabama Supreme Court's responses to the certified questions.

THE STATE OF ALABAMA – – – – – – JUDICIAL DEPARTMENT

THE SUPREME COURT OF ALABAMA

OCTOBER TERM, 1982–83

Brenda Phillips, Plaintiff

CER 24        v.

Smalley Maintenance Services, Inc., a corporation;

and Ray Smalley, individually, Defendants

---

5. Other items of testimony are challenged as going beyond the bounds of lay opinion testimony or as being irrelevant. We reject these claims and find that the testimony in question was properly admitted under Fed.R.Evid. 701(a) and 402.

Appellant raises several hearsay challenges which also are without merit. An out-of-court statement made to appellee by her husband about which she testified was not admitted for the truth of the matter asserted and, thus, was not hearsay. Fed.R.Evid. 802. Witness Rowell testified to statements made by appellee which were admitted to prove her then existing state of mind and were admissible under Fed.R.Evid. 803(3). Rowell's testimony that he had seen other female employees leave appellant's office when there was paper over the window was admissible under Fed.R.Evid. 401.

CERTIFIED QUESTIONS FROM THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

JONES, JUSTICE.

In this action, pursuant to 42 U.S.C. § 2000e, et seq., Title VII of the Civil Rights Act of 1964, before the United States Court of Appeals for the Eleventh Circuit, certain pendent Alabama state law claims are presented for review. Because resolution of one pendent claim is dependent upon a question of law of the State of Alabama for which there seems to be no clear controlling precedent under our prior holdings, the Court of Appeals has certified to this Court the following questions:

1. Does the law of the State of Alabama recognize the tort of invasion of privacy in the form described in § 642B, *Restatement (Second) of Torts* (1977) and set forth below?

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

2. If the answer to Question 1 is "yes," must information about the plaintiff's "private activities" actually be acquired through intrusion before the cause of action is established?

3. If the answer to Question 1 is "yes," is communication to third parties of information about a plaintiff's "private activities," obtained as a result of the wrongful invasion, necessary to establish a claim for this form of tortious "invasion of privacy"?

4. If the answer to Question 1 is "yes," must the acquisition or attempted acquisition of information about the plaintiff be undertaken surreptitiously in order for a cause of action to be made out?

5. If the answer to Question 1 is "yes," is an invasion of psychological solitude sufficient to establish the cause of action or is an invasion of a physical place of solitude or seclusion necessary?

6. Do the facts of this case support a claim under Alabama law for "the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities"?

7. If the answer to Question 1 is "yes," are damages recoverable for medical problems, including chronic anxiety, which are causally connected to the wrongful invasion or intrusion?

\* \* \*

[Statement of Facts and one footnote deleted]

## INVASION OF PRIVACY IN ALABAMA

Since 1948, beginning with the case of *Smith v. Doss,* 251 Ala. 250, 37 So.2d 118 (1948), Alabama has recognized the tort of "invasion of the right to privacy." See *Liberty Loan Corporation of Gadsden v. Mizell,* 410 So.2d 45 (Ala.1982); *Hamilton v. South Central Bell Telephone Company,* 369 So.2d 16 (Ala.1979).

It is generally accepted that the invasion of privacy tort consists of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion;[2] 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use. *Norris v. Moskin Stores, Inc.,* 272 Ala. 174, 132 So.2d 321 (Ala.1961),

---

**2.** While our focus is primarily upon the definition of "Intrusion upon Seclusion," encompassed by *Restatement (Second) of Torts* § 652B (1977), the *Smith v. Doss* decision, *supra,* discussed this topic pursuant to the definition set forth in *Restatement of Torts* § 867 (1939), a definition which, because of its similarity with that in *Restatement (Second)* will not be repeated here.

**1534**

citing W. Prosser, *Law of Torts,* pp. 637–39 (2d ed. 1955).

The *Norris* Court said:

"We think this analysis fundamentally consistent with our statement in the Doss case and reaffirmed in the Abernathy case, adopted from 41 Am.Jur. 925, that the right of privacy is ' "the right of a person to be free from unwarranted publicity," or "the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern or *the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities."* ' [Emphasis added.]"

The parties concede that Plaintiff's action is premised upon that species of the privacy realm known as a "wrongful intrusion into one's private activities." *Norris.* Despite previous recognition and description of the "wrongful intrusion" tort, we have never, up to now, specifically adopted the language of *Restatement (Second) of Torts,* § 652B (1977), as the law of this State.

Plaintiff argues that *Norris*'s recognition of "intrusion into one's private activities" is essentially the same as an intrusion "upon the solitude or seclusion of another or his private affairs or concerns," *Restatement (Second) of Torts* § 652B; and that, by analogy, it can readily be said that our existing case law, in effect, has assimilated § 652B into our body of jurisprudence. Defendants seek to temper the persuasiveness of this argument with a reminder that the *Restatement (Second) of Torts,* § 652B, is not necessarily authoritative or binding on this Court.

The United States Supreme Court has specifically recognized "marriage" and "sexual" concerns as fundamental rights, entitled to privacy protection. *Eisenstadt, Sheriff v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

*Restatement (Second) of Torts,* § 652B, and its Comment, enunciate a clear and concise definition, and establish the perimeter, of the "wrongful intrusion" tort, which, when read in light of our own case law, affords meaningful guidelines for the adjudication of such actions as alleged by the instant Plaintiff. Consequently, we answer the Court of Appeals' first inquiry in the affirmative.

THE REQUIREMENT OF "ACQUIRING" INFORMATION ABOUT PLAINTIFF'S PRIVATE ACTIVITIES

The Court of Appeals' second query is as follows: "[M]ust information about the plaintiff's 'private activities' actually be acquired through the intrusion before the cause of action is established?"

Defendants argue that because Plaintiff "declined Defendant's invitation and did not answer his inquiries, so no information about Plaintiff's sexual experiences, practices, or inclinations was acquired or disclosed," nothing was "acquired" by Defendant about Plaintiff so as to justify allegations of "wrongful intrusion." We disagree.

Illustration 5 to § 652B finds liability for "wrongful intrusion" or "intrusion upon seclusion" where a photographer makes numerous calls to a person at all times of the day and night, insisting that he be allowed to photograph her. The photographer ignores the lady's pleas that he desist. See, also, *Housh v. Peth,* 99 Ohio App. 485, 135 N.E.2d 440 (1955); *Barnett v. Collection Service Co.,* 214 Iowa 1303, 242 N.W. 25 (1932); and *La Salle Extension University v. Fogarty,* 126 Neb. 457, 253 N.W. 424 (1934), all of which find liability for invasion of privacy or "intrusion upon seclusion" without any requirement that information be "acquired."

We hold that acquisition of information from a plaintiff is not a requisite element of a § 652B cause of action.

COMMUNICATION TO THIRD PARTIES ABOUT PLAINTIFF'S PRIVATE ACTIVITIES

Although Defendants vigorously insist to the contrary, we cannot agree that 652B's

application must be triggered by some "communication" or "publication" by a defendant to a third party of any private information elicited from a plaintiff. Comment (a) of § 652B, in pertinent part, states, "The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs." Comment (b) goes on to say: "The intrusion itself makes the defendant subject to liability, even though there is no publication...." See Illustration 1–5 for factual contexts in which liability may be found absent any element of "publicity" or "disclosure" to third parties.

In *Estate of Berthiaume v. Pratt,* 365 A.2d 792 (Me.1976), a cause of action for invasion of privacy was held stated where the defendant, a physician, had photographed a dying man in his hospital bed, over his objections. The appellate court dismissed as erroneous a trial court's determination that "publication" was necessary for liability, and, quoting an older case, discuss the difference between "libel" and "invasion of privacy."

> "The author of a libel is the creator and there can be no offense until the contents are communicated to another. One cannot invade the rights of another merely by expressing his thoughts on paper. Two persons are necessary. One's right of privacy, however, may be invaded by a *single* human agency." (Emphasis added.)

Holding, as we do, that "publication" or "communication" is not a necessary element upon which to predicate § 652B liability, we respond to this question in the negative.

## "SURREPTITIOUS" INVASION OF THE RIGHT TO PRIVACY

Defendants argue that, if the claimed invasion of one's right to privacy is the attempted acquisition of information about a plaintiff's private matters or affairs, then it necessarily follows that such attempted acquisition must be made "surreptitiously." We disagree.

While conduct undertaken surreptitiously may form the basis of a different actionable claim, we find no authority for the proposition that this is an element of the "wrongful intrusion" tort. Indeed, no information was obtained surreptitiously in *Norris,*[3] nor was any information gained surreptitiously in *Bennett v. Norban,* 396 Pa. 94, 151 A.2d 476 (1959), cited by this Court in *Norris.*

In *Bennett, supra,* the plaintiff was stopped outside defendant's store by the assistant manager of the store:

> "He put his hand on her shoulder, put himself in position to block her path, and ordered her to take off her coat, which, being frightened, she did. He then said: 'What about your pockets?' and reached into two pockets on the sides of her dress. Not finding anything, he took her purse from her hand, pulled her things out of it, peered into it, replaced the things, gave it back to her, mumbled something, and ran back into the store." 151 A.2d at 477.

Although no surreptitious conduct was involved, and no information of the plaintiff's private activities was obtained, the Court held that the plaintiff did have an invasion of privacy action. "The angry performance of defendant's agent was an unreasonable and serious interference with appellant's desire for anonymity and an intrusion beyond the limits of decency." 151 A.2d at 479.

We find untenable Defendants' position that, because Smalley's actions occurred "out in the open," Plaintiff's cause of action should be barred. We decline to hold that "surreptitious" or "clandestine" activities are necessary elements of § 652B liability, and respond to this certified question in the negative.

---

**3.** Defendants attempt to distinguish the present case from *Norris* on the basis that *Norris* was a "debt collection" case, as opposed to a "wrongful intrusion" tort. Neither the *Restatement* (*Second*) *of Torts,* nor established case authority, recognizes "debt collection" cases as a separate category of invasion of privacy.

### INVASION OF "PSYCHOLOGICAL" SOLITUDE OR "PHYSICAL PLACE" OF SOLITUDE

Stated succinctly, the query posed under this heading is the necessity *vel non* that a defendant invade some "physically defined area or place" as opposed to one's "personality" or "psychological integrity" in order to trigger liability under § 652B. Defendants respond in pertinent part to this question as follows:

"The word 'solitude' essentially means being alone, a concept that obviously embraces the idea of being in a physical location with no one else present. See *Webster's Third New International Dictionary,* G. & C. Merriam Co., 2179 (1971). Indeed, by definition, there probably is no such state as 'psychological' solitude apart from physical solitude. The word 'seclusion' essentially means shut up or confined, a concept that necessarily includes a physical location. See *Webster's Third New International Dictionary,* G. & C. Merriam Co., 2050 (1971). When solitude and seclusion are further modified in the *Norris v. Moskin Stores* definition by the word 'physical,' there can be no doubt that for the intrusion category of this tort the plaintiff must be in a physical place of solitude or seclusion which the defendant invades. Under this definition an invasion of 'psychological' solitude, if such a state exists, is clearly not sufficient."

Section 652B places liability on one who "intentionally intrudes, physically or otherwise" in the proscribed manner. Comment (b) to this section states:

"The invasion may be physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs window with binoculars or tapping his telephone wires. It may be by some *other form* of investigation or *examination* into his private concerns . . . ." (Emphasis added.)

Applying these principles to the facts at hand, we find that Smalley's intrusive and coercive sexual demands upon Brenda Phillips were such an "examination" into her "private concerns," that is, improper inquiries into her personal sexual proclivities and personality. Defendants' contention that such "invasion" might be actionable if it occurred in one physical location, but not if it occurred in another, does not comport with the theme of the interest protected by this tort cause of action.

Comment (c) states in part:

"The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has *otherwise* invaded a private seclusion that the plaintiff has thrown about his person or *affairs.*" (Emphasis added.)

Comment (c) also points out that the "wrongful intrusion" privacy violation can occur in a public place, when the matter intruded upon is of a sufficiently personal nature:

"Even in a public place, however, there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters."

In *Vernars v. Young,* 539 F.2d 966 (3d Cir.1976), the court held that the plaintiff had stated a cause of action for invasion upon privacy. The plaintiff there alleged that the defendant, a 50% stockholder, officer, and director of a corporation, had opened and read, without plaintiff's consent, mail addressed to the plaintiff (also a stockholder, officer, and director), which had been delivered to the office of their corporation, but addressed to plaintiff and marked "personal." A reasonable expectation of privacy was found to exist, even in

his business environment. There was no requirement that some "physical" area be violated.

While in some instances physical location may be a factor in determining whether the alleged intrusion is actionable, the offensive conduct demonstrated by the evidence of record in this case is of such a personal nature that, as Plaintiff suggests, it would be wrongful, and thus actionable, no matter where it occurred.

We disagree with Defendants' assertion that intrusion upon a physical place, analogous to a trespass, must be required before liability may be predicated for a § 652B tort. One's emotional sanctum is certainly due the same expectations of privacy as one's physical environment. We answer this query in the negative.

## THE INSTANT CASE

Do the facts of this case support a claim under Alabama law for "the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities?" We hold they do.

During Plaintiff's tenure with Defendants, she was subjected to intrusive demands and threats, including an inquiry as to the nature of sex between her and her husband. According to testimony, such incidents were occurring two or three times each week. Additionally, we note from Plaintiff's testimony of record the repulsive manner in which Smalley's solicitations were made. On one occasion, he struck her across the buttocks with his hand. On still another occasion, he began papering his office window, thus obscuring the view of those in the surrounding area, in pursuit of what he hoped would be the consummation of lurid propositions to Plaintiff. Smalley, aware of the importance to Plaintiff of her regular income, rendered her, in. effect, an "economic prisoner."

We have no hesitancy in expressing our conclusion that these facts meet all the requisite elements contemplated by *Restatement (Second) of Torts* § 652B.

## DAMAGES

A plaintiff may recover substantial general damages that naturally and necessarily flow from the wrongful act, and may also recover all special damages which proximately result from the breach of his privacy. C. Gamble & D. Corley, *Alabama Law of Damages,* §§ 326–38 at 432 (1982). This authority suggests a jury instruction that allows assessment of damages for "mental suffering," "shame or humiliation," and "other damages," and observes that in such cases it is not necessary to plead or prove special damages.

While a negligent tortfeasor is responsible for all injuries which are proximately caused by his tort (*Louisville & N.R. Co. v. Maddox,* 236 Ala. 594, 183 So. 849 (1938)), there is "extended liability" for intentional torts and the rules of proximate causation are more liberally applied than for mere negligence. *Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortgage Co.,* 390 So.2d 601 (Ala.1980).

An injury to personality may produce suffering much more acute than that produced by a mere bodily injury. *Smith v. Doss, supra.* We find unnecessary an elongated recitation of the medical and emotional agitations caused Plaintiff by Defendants' actions. Suffice it to say that the existence and severity of her emotional problems, which required professional treatment, are documented in the record.

We hold that those damages for Plaintiff's medical problems, including chronic anxiety, proximately caused by Defendants' "wrongful intrusion or invasion" are recoverable.

QUESTIONS ANSWERED.

All the Justices concur except FAULKNER and ALMON, JJ., not sitting.