Patricia **MONGEON**

v.

**SHELLCRAFT INDUSTRIES, INC.**

**SHELLCRAFT INDUSTRIES, INC.**

v.

Patricia **MONGEON.**

**Civ. A. No. 83–372.**

United States District Court,
D. Vermont.

July 23, 1984.

Michael Sirotkin, Mickenberg, Dunn, Sirotkin & Kupersmith, Burlington, Vt., for plaintiff.

Dennis Pearson, Gravel, Shea & Wright, Burlington, Vt., for defendant.

COFFRIN, Chief Judge.

In this action plaintiff claims that her former employer, Shellcraft Industries, Inc., is liable for sex discrimination in violation of state and federal statutes. Plaintiff also alleges that her former employer is liable for breach of contract and in tort law for the same and related acts. Defendant allegedly hired a permanent replacement for plaintiff shortly before plaintiff began an approximately two month leave of absence to bear a child, thus allegedly discriminating against plaintiff in comparison with male workers suffering temporary disability. Defendant has moved to dismiss counts V and VI of the complaint, the contract and tort claims, on the ground that the court should refuse to exercise pendent jurisdiction over those claims. Defendant has also moved to dismiss Count VI for failure to state a claim. For the following reasons, the court dismisses Counts III, IV, V and VI for lack of pendent jurisdiction,[1] and we need not consider defendant's motion to dismiss Count VI for failure to state a claim.

## The Complaint

Plaintiff's statutory sex discrimination claims comprise four counts of her complaint. Counts I and II allege that defendant's actions constituted unlawful employment practices under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Specifically, it is alleged that defendant first discriminated against her on the basis of sex and then on the basis of her having protested defendant's sex discrimination. 42 U.S.C. §§ 2000e–2(a)(1), 2000e–3(a).

Counts III and IV make virtually identical allegations of fact in violation of Vermont's Fair Employment Practices Act, 21 V.S.A. §§ 495(a)(1), (a)(5). Count V alleges a tort of intentional infliction of extreme emotional distress. Count VI alleges breach of plaintiff's employment contract by discharge without good cause. Plaintiff has requested a jury trial which she is entitled to on the state law claims but not on the federal claims. *See Lincoln v. Board of Regents of University System of Georgia,* 697 F.2d 928 (11th Cir.1983) (relief under Title VII is equitable in nature so no right to jury trial); *Flores v. Local 25, International Brotherhood of Electrical Workers, AFL–CIO,* 407 F.Supp. 218 (E.D.N.Y.1976). She has requested an award of back pay, and legal damages for future loss of income, emotional distress and bodily harm. Plaintiff has also requested attorney's fees.

Plaintiff's complaint states that she was hired as defendant's office manager/bookkeeper in December 1979. She became pregnant in the summer of 1981. She allegedly lost her job in 1982 because her employer refused to treat her absence for bearing the child as a temporary disability, and instead hired a permanent replacement. In December, 1982 plaintiff filed a complaint with the Civil Rights Division of the Vermont Office of Attorney General. She received a "Notice of Right to Sue" from the Equal Employment Opportunity Commission in July, 1983.

## Discussion

The jurisdictional question before the court is one that has divided federal district courts for several years but has apparently only once reached a federal appeals court. The question is whether federal courts should exercise pendent jurisdiction over state law claims sharing a common nucleus

---

1. At hearing, the court inquired of defendant's counsel why he had not included Counts III and IV in his motion to dismiss, because defendant's arguments appear to address all state claims. Counsel responded that Counts III and IV present unsettled questions of state law that discouraged their inclusion in the motion. Specifically, he noted the lack of clarification whether the state sex discrimination statute provides for jury trial and consequential damages. The court, for reasons given below, dismisses these counts *sua sponte* on jurisdictional grounds.

of fact with federal civil rights claims brought under 42 U.S.C. § 2000e *et seq.*

We believe the answers of various courts have been inconsistent in large part because of apparent confusion as to the appropriate test for pendent jurisdiction as well as its application. Most, if not all, of the courts which have opted in favor of exercising pendent jurisdiction on Title VII cases have relied on the test outlined in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *See, e.g., Phillips v. Smalley Maintenance Services, Inc.,* 711 F.2d 1524 (11th Cir. 1983); *Frykberg v. State Farm Mutual Automobile Insurance Co.,* 557 F.Supp. 517 (W.D.N.C.1983); *Guyette v. Stauffer Chemical Co.,* 518 F.Supp. 521 (D.N.J. 1981); *but cf. James v. KID Broadcasting Corp.,* 559 F.Supp. 1153 (D.Idaho 1983) (applying *Gibbs* test in Title VII case to deny pendent jurisdiction as discretionary matter); *Parah v. Haveg Industries,* No. 78–126 (D.Vt.1979).

The *Gibbs* test can be divided into two parts. The first is whether a common nucleus of fact exists between the federal and state law claims such that they may be considered a single "case" for purposes of satisfying Article III of the Constitution. The second part is an analysis of several factors intended to guide the court in an essentially discretionary judgment as to whether exercising pendent jurisdiction would serve the interests of judicial economy, convenience, fairness to the parties and comity. The *Gibbs* test is thus clearly case-specific since the considerations for exercising discretion will vary depending on the particular type of claims at issue. It is therefore not surprising that in applying the *Gibbs* test the courts have come to varying results.

The courts which have denied pendent jurisdiction in Title VII cases have usually relied on a different test. *See, e.g., Frye v. Pioneer Logging Machinery, Inc.,* 555 F.Supp. 730 (D.S.C.1983); *Bennett v. Southern Marine Management Co.,* 531 F.Supp. 115 (M.D.Fla.1982); *Lim v. The International Institute of Metropolitan Detroit, Inc.,* 510 F.Supp. 722 (E.D.Mich. 1981). These courts have applied the rule expressed in *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), which added a third element to the test for pendent jurisdiction. The Supreme Court held in *Kroger* that

a finding that federal and non-federal claims arise from a "common nucleus of operative fact," the test of *Gibbs,* does not end the inquiry into whether a federal court has power to hear the non-federal claims along with the federal ones. Beyond this constitutional minimum, there must be an examination of the posture in which the non-federal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether "Congress in [that statute] has ... expressly or by implication negated the exercise of jurisdiction over the particular non-federal claim.

437 U.S. at 373, 98 S.Ct. at 2402 (quoting *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

The courts have applied this additional test in Title VII cases by noting principally that Congress intended such cases "to be in every way expedited," 42 U.S.C. § 2000e–5(f)(5), and that joinder of state law claims would conflict with that goal. Specifically, delay might be caused by necessary discovery and proof regarding damages available under state law but not under Title VII, since Title VII provides only for equitable relief. Conflict with Congressional intent has also been inferred from the absence of a right to a jury trial under Title VII and the limitation of Title VII remedies to equitable relief. Consequently, these courts have decided in effect that state law claims in which there is a right to jury trial and legal damages may *never* be joined to federal claims under Title VII.

There being no question as to a common nucleus of facts, we conclude that we must attempt to address Congressional intent in this case. It is possible to debate that conclusion by distinguishing *Kroger* and

related Supreme Court decisions as bearing only on questions of so-called "pendant *party* jurisdiction," since they have involved joinder of additional parties rather than merely additional claims against present parties. *See Kroger* (non-diverse third party defendant); *Aldinger* (county not liable in Section 1983 action under the then-existing rule of *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) ); *Zahn v. International Paper,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (potential class members failing to meet amount in controversy requirement individually). The language of *Kroger* was broad, however, and spoke of "claims" rather than only "parties." And recent commentators have agreed that the test for pendent jurisdiction must now be "three-tiered" in light of *Kroger.* Matasar, *Rediscovering "One Constitutional Case": Procedural Rules and the Rejection of the Gibbs Test for Supplemental Jurisdiction,* 71 Calif.L.Rev. 1401, 1402 n. 4 (1983); Note, *A Closer Look at Pendent and Ancillary Jurisdiction: Toward A Theory of Incidental Jurisdiction,* 95 Harv.L.Rev. 1935 (1982).

The language of the jurisdictional grant itself, that federal district courts "shall have jurisdiction of actions brought under this subchapter," does not expressly indicate congressional intent. Nor have we found any language in the available legislative history that specifically addresses the question of pendent jurisdiction.[2] The immediate question is therefore what Congress might have *implicitly* intended with respect to exercising pendent jurisdiction in Title VII cases. We begin by identifying the principal characteristics of private actions under Title VII.

The statute requires that Title VII claims be initially referred to a state or local agency responsible for handling similar complaints under state or local law, if such laws and agencies exist. 42 U.S.C. § 2000e–5(c). Such an agency may then act as it sees fit in granting or seeking relief on an employee's behalf. A complaint may not be formally filed with the federal Equal Employment Opportunity Commission (EEOC) until sixty days after a state or local proceeding has been commenced or until such a proceeding terminates, whichever is earlier. A complaint must be filed with the EEOC within either one hundred and eighty or three hundred days after the alleged unlawful employment practice occurred, depending on whether state or local proceedings were commenced, but no later than thirty days after a state or local agency notifies a complainant that it has terminated a state or local proceeding. The EEOC then has one hundred and eighty days to review the case and either dismiss it, enter a conciliation agreement with all parties, or file suit against the employer. If it dismisses the complaint or fails to accomplish the other two options in that time it must notify the complainant of his or her right to bring a private action. 42 U.S.C. § 2000e–5(f)(1). Such a private action must then be brought within ninety days of notice of "right to sue." Once a private action is filed in district court, it is "to be in every way expedited" and may be referred to a master if not scheduled for trial within four months of the filing of defendant's answer. 42 U.S.C. § 2000e–5(f)(5). Finally, the statute provides for trial by court[3] and for equitable relief including injunctions, reinstatement and up to two years of back pay.

---

**2.** The court has reviewed a substantial portion of the congressional debates concerning Title VII prior to its original passage in 1964. *See* 110 Cong.Rec. 7205–7226 (remarks and interpretive memorandum of Senator Clark, one of the bill's sponsors); *see generally* EEOC, Legislative History of Title VII and XI of Civil Rights Act of 1964. The court has also reviewed the relevant committee reports from the Act's initial consideration in 1964 and its amendment in 1972.

**3.** The statute itself does not actually state that private actions are to be tried by the court without a jury, but courts have consistently interpreted the statute in that manner. *See e.g. Lincoln v. Board of Regents of University System of Georgia,* 697 F.2d 928 (11th Cir.1983); *Seymore v. Reader's Digest Association, Inc.,* 493 F.Supp. 257 (S.D.N.Y.1980).

Nearly every one of these provisions, either expressly or impliedly, makes it clear that Congress intended a prompt as well as effective remedy under Title VII. That is true of the provisions for limited relief and trial by court as well as the various deadlines for each stage of a complaint's development. There is no doubt that jury trials generally wait longer on federal dockets. *See Curtis v. Loether,* 415 U.S. 189, 198, 94 S.Ct. 1005, 1010, 39 L.Ed.2d 260 (1974); *Melancon v. McKeithen,* 345 F.Supp. 1025, 1027–28 (E.D.La.) (three judge court), *aff'd per curiam,* 409 U.S. 943, 93 S.Ct. 289, 34 L.Ed.2d 214 (1972). There is also no doubt that discovery required for "legal" damages for emotional distress and lost income may require significant time beyond that which is required for relief limited to reinstatement and back pay.

This apparent intent of Congress is confirmed by the legislative history to the 1972 amendments to Title VII, which included adding the provisions for expedited trial and referral to special masters. *See* H.Conf.Rep. No. 92–899, S.Conf.Rep. No. 92–681, *reprinted in* 1972 U.S.Code Cong. & Ad.News 2137, 2179, 2182–83 (hereinafter "Conference Reports"). The Senate bill, from which both of these provisions were drawn, was based largely on the concern that "[j]ustice delayed is justice denied." S.Rep. No. 92–415, 92d Cong. 1st Sess. at 18.

Once it is clear that private actions were intended to be expeditious, it is also clear that the exercise of pendent jurisdiction in such actions is fundamentally inconsistent with their intended form. Indeed, some of the very purposes for which plaintiffs may seek to join state law actions, including the availability of broader relief and a jury trial, are the sort of relief and procedure that Congress implicitly rejected in favor of a streamlined remedy. We therefore concur with the courts that have denied pendent jurisdiction in private actions under Title VII.

The court has been troubled with this result only with respect to one argument, but it is satisfied that various considerations refute that argument. It has been pointed out that notwithstanding all the provisions for expedited trial of Title VII actions, Congress has twice rejected amendments making Title VII an exclusive remedy. *See* Conference Reports at 2181–82; *see also Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48 n. 9, 94 S.Ct. 1011, 1019 n. 9, 39 L.Ed.2d 147 (1974) (noting legislative history to original legislation). The Supreme Court, relying on this refusal, has held that Title VII claims may be joined with other federal claims for discrimination even though the other federal claims provide for a jury trial and a full range of legal as well as equitable remedies. *Johnson v. Railway Express Agency,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975) (including the Civil Rights Act of 1866, 42 U.S.C. § 1981). It may then be argued that exercising pendent jurisdiction over state law claims poses no greater harm to Congressional intent than does permissible joinder with related federal claims, and is implicitly consistent with relief under Title VII.

We agree, however, with the observation of the court in *Lim v. International Institute of Metropolitan Detroit, Inc., supra,* that joinder of broader federal claims "does not implicate the jurisdictional concern voiced by the Supreme Court in *Aldinger* and *Kroger.*" 510 F.Supp. at 725. Specifically, we note that Congress was "particularly concerned with the acute problem of overcrowding of our trial court system" when it passed the 1972 amendments. S.Rep. No. 92–415, *supra* at 18; *see also Johnson v. Al Tech Specialities Steel Corp.,* 731 F.2d 143 at 148 (2d Cir.1984) (emphasizing Congressional emphasis on administrative dispute resolution to minimize judicial burden under Title VII). The joinder of federal claims otherwise on the federal docket poses no injury to that concern. The joinder of state law claims clearly does.

We also note in this regard that as a general matter, the exercise of pendent jurisdiction in Title VII actions would frequently if not almost invariably offend the

traditional jurisdictional concerns under *Gibbs*. Combining theories of relief may well confuse a jury even if equitable relief is left to the court. More importantly, related state claims will often require what the Court in *Gibbs* described as "needless decisions of state law [that] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. at 726, 86 S.Ct. at 1139.

In this case, for instance, there is a significant question whether Vermont has adopted the exceptional claim for breach of an at will employment contract. *See Brown v. Holmes Transportation, Inc.*, 140 Vt. 114, 117, 435 A.2d 952 (1981). There are also significant questions whether plaintiff is actually entitled to a jury trial under the state statutory claims and under the emotional distress claim. Neither action existed at common law at the time the Vermont Constitution was adopted,[4] and the constitutional provision for jury trials has been construed narrowly to cover only such preexisting claims. *See State Department of Taxes v. Tri-State Laundries*, 138 Vt. 292, 297, 415 A.2d 216 (1980) (interpreting Ch. 1 Art. 12 of the Vermont Constitution); *but cf. Curtis v. Loether*, 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974) (broader interpretation of similarly worded seventh amendment to the federal constitution). There is also a question as to the scope of relief available under the state statute. It refers to "damages or equitable relief," but refers specifically only to various equitable remedies. The Vermont Supreme Court has not yet addressed this issue.

Resolution of these types of questions would obviously delay any related federal action under Title VII, and we conclude that Congress has impliedly negated the exercise of pendent jurisdiction which would require such delay. Furthermore, even if the court is mistaken as to its analysis under *Aldinger* and *Kroger* as a general matter, we find that these questions, combined with other factors relevant to the *Gibbs* analysis, steer the court away from exercising pendent jurisdiction over plaintiff's state law claims.

The court perceives the state law claims as predominant over the Title VII claim in this case. Such predominance is another factor relevant under *Gibbs*, 383 U.S. at 726–27, 86 S.Ct. at 1139–40; *see also James v. KID Broadcasting, supra* at 1157; *Frye v. Pioneer Logging Machinery Co., supra* at 735–36. Proof of the state claims would require not only the evidence required for the Title VII claims but also substantial additional evidence regarding the nature of plaintiff's employment contract, her claim for emotional distress,[5] and how defendant's actions have caused and will cause her financial loss other than loss of backpay and benefits. As discussed above, there are also several legal issues involving the state claims which go well beyond the issues before the court under Title VII. Perhaps most importantly, we note that plaintiff is not seeking reinstatement, which is half of the remedial scheme under Title VII. The predominant relief requested appears to be in the nature of legal damages. Plaintiff's request for backpay may involve a considerable sum, but that amount may be awarded by the jury in the form of legal damages as well. Ultimately, plaintiff might well obtain exclusively legal relief, since the court may refuse in its discretion to award backpay if the jury award satisfies plaintiff's loss.

Given the predominance of state claims and relief and the number of unsettled state law issues raised by these claims, the court concludes that they should be dis-

---

**4.** *See* 21 V.S.A. § 495 (enacted in 1963), and *Sheltra v. Smith*, 136 Vt. 472, 476, 392 A.2d 431 (1978) (first adopting independent claim for emotional distress).

**5.** "[T]he allegedly extreme and outrageous type conduct which underlies the cause for intention-

al infliction of emotional distress is not in any way involved in the question of failure to reinstate because of pregnancy." *Frye v. Pioneer Logging Machinery Co.*, 555 F.Supp. 730, 735 (D.S.C.1983).

missed as a discretionary matter under *Gibbs* even if the court is mistaken in its analysis of Congressional intent under *Aldinger* and *Kroger*.

*Conclusion*

Accordingly, it is hereby ORDERED that Counts III, IV, V and VI are dismissed without prejudice.