Nancy **BENNETT**

v.

**STEINER–LIFF IRON AND METAL COMPANY.**

No. 3–88–0365.

United States District Court, M.D. Tennessee, Nashville Division.

May 23, 1989.

---

Charles Ray, and Paul Housch, Ray & Housch, and Elaine R. Jett, Nashville, Tenn., for plaintiff.

Thomas Wardlaw Steele, William R. Willis, Jr., and Marian F. Harrison, Willis & Knight, Nashville, Tenn., for defendant.

## MEMORANDUM

HIGGINS, District Judge.

This matter is before the Court on a motion to dismiss under Rules 12(b)(1) and 12(c), Fed.R.Civ.P. Plaintiff Nancy Bennett is an adult resident of Tennessee. Defendant Steiner–Liff Iron & Metal Co. (the Company) is a Tennessee corporation with its principal place of business in Nashville.

Ms. Bennett commenced this action on May 2, 1988. She alleges in her amended complaint that she was employed by Steiner–Liff from May 6, 1985, to January 22, 1987. It is her contention that while employed by the Company, she was continually subjected to various forms of sexual discrimination and abuse. In particular, she asserts that she was paid less than her male predecessor because of her sex; that she was denied the normal responsibilities of her position because of her sex; that there was a "hostile work environment" in which women were treated in a demeaning manner; that she was the object of degrading sexually-oriented remarks; and that when she complained about these and other objectionable practices, reprisals were taken against her. Plaintiff alleges that work under such conditions soon became intolerable, and that her eventual resignation constituted a "constructive discharge." She alleges in her complaint violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and also asserts pendent claims for relief under state law, specifically the Tennessee Human Rights Act, Tenn.Code Ann. §§ 4–21–301 and 4–21–401, and the common law of Tennessee.

Steiner–Liff answered with general denials, and on January 17, 1989, moved to dismiss the pendent state claims or, in the alternative, for judgment on the pleadings.

This Court has jurisdiction over the Title VII claim by virtue of 28 U.S.C. §§ 2201 and 2202. The Court's pendent jurisdiction over the state claims is the focus of the present controversy.

In moving to dismiss, Steiner–Liff advances five arguments concerning the plaintiff's state claims:

1. They are not pendent claims over which this court may exercise jurisdiction;

2. They state no claim recognized under Tennessee law;

3. Their consideration would require this court to apply an exception to the long-established Tennessee terminable-at-will doctrine which has never been applied by the Tennessee Supreme Court in an analogous case;

4. Their consideration would cause state issues to predominate in terms of the amount of proof, the scope of the issues raised, and the comprehensiveness of the remedy sought; and

5. Their consideration would cause a strong likelihood of jury confusion.

Since there is no question that this Court has subject matter jurisdiction over a Title VII claim, the questions now before the Court can be boiled down to a pair of simple ones: (1) Are the state claims prop-

erly within the Court's pendent jurisdiction? (2) If so, should this Court decline to exercise jurisdiction?

 Ordinarily, a court ought not to decline to hear a claim if it clearly has jurisdiction of both parties as well as the subject matter. But, pendent jurisdiction is a special and unique problem area in our dual judicial system of federal and state courts. Courts confronted with pendent jurisdiction problems must weigh the considerations favoring its exercise against the various factors militating against it. The former include the desirability of avoiding piecemeal litigation with the risk of inconsistent results and the need for courts to have the capacity to give complete relief. On the other side of the scale is the undesirability of federal courts making unnecessary constructions of state law without adequate guidance from the state courts.

 The Supreme Court has laid down guidelines for the exercise of federal pendent jurisdiction. The policy considerations emphasized by the Supreme Court bespeak prudence and caution. To begin with, pendent jurisdiction is not a party's right; it is a matter for the discretion of the court. *E.g., Carnegie–Mellon University v. Cohill,* 484 U.S. 343, ——, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

The chief factor affecting the use of that discretion was announced in *Gibbs,* the leading case. First, the Court must establish that it has Article III jurisdiction over the pendent claim:

> The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

*Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138. *Cf. Gaff v. Federal Deposit Insurance Corp.,* 828 F.2d 1145, 1149–50 (6th Cir. 1987). Such a finding, however, does not end the inquiry.

> ... That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them ... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law ... [I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*Gibbs,* 383 U.S. at 726–27, 86 S.Ct. at 1139.

These guidelines, in effect, erect a set of hurdles for parties invoking a federal court's pendent jurisdiction. If the party fails to clear any one of them, the Court will be justified in declining to decide the state claim.

A corollary of this is that if a court wishes to dispose of a matter with a judgment no broader than it has to be (and this, of course, should be the normal course), it will often find it expedient to turn first to the test the state claim seems most likely to fail. That is the course the Court will pursue.

 Assuming, without deciding, that Ms. Bennett's state claims arose out of a "common nucleus of operative fact" with her Title VII claim, and further that Congress did not intend for Title VII claims to be tried with pendent state claims,[1] this

---

1. In actual fact, this is a fascinating question which has divided the lower federal courts.

Court must still deal with the question of whether comity and judicial economy would be better served by leaving these matters to the state courts.

Does Tennessee recognize a cause of action for "constructive discharge"? If not, would it do so if the issue were placed squarely before its courts? Would Tennessee extend the "public policy exception" to its prevailing "termination-at will" doctrine to create a common-law remedy for "whistleblowers" of the type Ms. Bennett claims to be? If not, did the enactment of the Tennessee Human Rights Act imply the creation of such a cause of action?

These are questions to which the existing law of Tennessee provides no clear solutions. Answering them would require this Court to write law for Tennessee on a more or less clean slate. Strong arguments for both positions are ably advanced in the briefs. But the very fact that such arguments can be plausibly made on one side, and forcefully rebutted on the other, points to the unsettled condition of Tennessee law on these issues.

As a matter of comity (not to mention plain common sense) federal courts should be reluctant to assume the role of trailblazers in state law. The courts of Tennessee, not the federal courts, should be the normal source for guidance concerning the laws of that state. Where no settled state law exists, the courts of the United States should give state courts the opportunity to make it, unless weighty reasons require action at the federal level immediately.

It has been held that where there are no reported cases on a specific state-law issue, "initial case law development for that claim is best left to the state courts." *Neptune v. McCarthy*, 706 F.Supp. 958, 962 (D.Mass.

1989). This is especially true "where close questions of state law are implicated." *Austin v. City of East Grand Rapids*, 685 F.Supp. 1396, 1409 (W.D.Mich.1988). *See also, e.g., Mitroff v. Xomox Corp.*, 797 F.2d 271, 279 (6th Cir.1986); *Weiser v. Koch*, 632 F.Supp. 1369, 1377 (S.D.N.Y. 1986).

It also appears that since Title VII affords only equitable relief, and the relief available under the state claims is much broader, the latter would probably predominate at trial. This is another reason for refusing the exercise of pendent jurisdiction. *Gibbs*, 383 U.S. at 726–27, 86 S.Ct. at 1139. *See also Bouchet v. Nat'l Urban League, Inc.*, 730 F.2d 799, 805–06 (D.C. Cir.1984) (Scalia, J.).

There is also considerable danger of a "likelihood of jury confusion in treating divergent legal theories of relief." *Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1139. This danger is aggravated in a Title VII action, where the jury may rule only on the pendent state claims, but will almost inevitably hear evidence going to the Title VII claim. *See, e.g., Spencer v. Banco Real, S.A.*, 623 F.Supp. 1008, 1013 (S.D.N.Y.1985); *Mongeon v. Shellcraft Industries, Inc.*, 590 F.Supp. 956, 960–61 (D.Vt.); *cf. Garcia v. Jefferson County*, 687 F.Supp. 1498, 1500–01 (D.Colo.1988) (consideration of pendent state claims would "unnecessarily expand the scope of the trial").

In the view of this Court, the dangers described above outweigh any advantages that could flow from entertaining these claims at the federal level. This Court declines to go out on a limb that the Tennessee courts may later choose to saw off. The plaintiff's pendent state claims will be

---

Some have held that Congress intended to preclude exercise of pendent jurisdiction in such cases, at least where Title VII is the *sole* basis for federal question jurisdiction. *E.g., Davis v. Devereux Foundation*, 644 F.Supp. 482 (E.D.Pa. 1986); *Mongeon v. Shellcraft Industries*, 590 F.Supp. 956 (D.Vt.1984); *Jon–Yul Lim v. Int'l Inst. of Metro. Detroit*, 510 F.Supp. 722 (E.D. Mich.1981). Other courts have rejected any such limitation. *E.g., Jones v. Intermountain Power Project*, 794 F.2d 546 (10th Cir.1986); *Yousef v. Borman Foods, Inc.*, 667 F.Supp. 443

(D.Md.1987); *Guyette v. Stauffer Chemical Co.*, 518 F.Supp. 521 (D.N.J.1981). The Sixth Circuit has ruled that pendent jurisdiction may be exercised where a Title VII claim forms *part* of the basis for federal question jurisdiction, but expressly reserved the question of whether such jurisdiction is proper where Title VII is the *sole* federal claim pleaded. *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1010 n. 1 (6th Cir.1987). For reasons given below, this Court also believes that this case is not an appropriate occasion to decide the question.

dismissed, without prejudice to her pursuit of her remedies in state court.

An appropriate order will be entered.

### ORDER

In accordance with the memorandum contemporaneously filed, defendant's motion of January 17, 1989, to dismiss the pendent state claims of plaintiff's amended complaint is granted. Said claims are hereby dismissed without prejudice to plaintiff's right to pursue any available state court remedies.

It is so ORDERED.