Linda Ann TAYLOR

v.

**STATE OF RHODE ISLAND, DEPART-
MENT OF MENTAL HEALTH
RETARDATION AND HOSPITALS.**

Civ. A. No. 89–0395.

United States District Court,
D. Rhode Island.

Dec. 6, 1989.

Susanna J. Mitchell, Mann & Mitchell, Providence, R.I., for plaintiff.

Robin E. Feder, Asst. Atty. Gen. and Ellen Evans Alexander, Sp. Asst. Atty. Gen., Dept. of Atty. Gen., Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

Defendant, State of Rhode Island (State), has brought this matter before the Court on a motion to dismiss various components of plaintiff's complaint alleging sex discrimination. Defendant has moved to dismiss the complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(7), for failure to join plaintiff's Union, Council 94. Defendant has also moved to dismiss Counts II and III, plaintiff's state law claims, asserting that Title VII preempts the state law claims.

## BACKGROUND

The complaint alleges that the State Department of Mental Health Retardation and Hospitals employed the plaintiff, Linda Ann Taylor, as a senior clerk typist for the fiscal management division thereof. Plaintiff was employed pursuant to a collective bargaining agreement negotiated between the State and the American Federation of State, County and Municipal Employees, Council 94. She contends that in 1987, the State denied her a promotion and raise because she is a woman.

The complaint, filed by plaintiff before the Equal Employment Opportunity Commission and the Rhode Island Human Rights Commission, alleges that she completed a civil service test and applied for a position as a fiscal clerk. She contends that although a male co-worker ranked lower after the test, her male supervisors assisted the male worker with his application while at the same time interfered with and discouraged her attempts at the promotion. Plaintiff alleged that one supervisor specifically told her that she could not be promoted because such an upgrade would be adverse to the other women in the office. That complaint also charged that in October of 1988, plaintiff's lesser-skilled male co-worker was promoted to fiscal clerk in a division to which she had applied. She finally charged that since the summer of 1987, her supervisors have retaliated against her because of the claims she has made against the State.

The complaint filed in this Court asserts three causes of action. Count I alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Count II claims a violation of the Rhode Island Fair Employment Practices Act, (FEPA) R.I. Gen.Laws § 28–5–1 *et seq.* Count III charges a deprivation of plaintiff's right to equal protection as guaranteed by Article I, Section 2 of the Rhode Island Constitution. Plaintiff seeks equitable relief, compensatory damages and attorney's fees.

The State now urges this Court to dismiss the complaint for plaintiff's failure to join Council 94 as a party. The State argues that any relief granted without the Union as a party would be incomplete. The State points to the collective bargaining agreement and insists that all promotions made relevant to this case complied with the promotional scheme of the agreement. The State hypothesizes that any finding by the Court that the State failed to comply with the seniority provision of the agreement would subject the State to further litigation by the Union, and, absent joinder, would preclude the Court from determining the Union's role in agreeing to a seniority system.

Although the State posits an alternative theory for dismissal on preemption grounds, it appears, upon close analysis, that the State is really asserting a traditional pendent state claim basis for preclusion of plaintiff's FEPA action. Finally, the State cites *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in support of its contention that Title VII provides alternative relief which prevents consideration of plaintiff's state constitutional equal protection claim.

After oral arguments and disposition of other motions not germane here, the Court took these issues under advisement. This matter is now in order for decision.

## DISCUSSION

### A. Failure to join Union.

■■■ Federal Rules of Civil Procedure 12(b)(7) authorizes the dismissal of a complaint for "failure to join a party under Rule 19." Rule 19 invokes a two-tiered analysis. Fed.R.Civ.P. 19(a). First, the Court must evaluate whether the absent party has an interest in the subject matter of the lawsuit. *Id.* If the Court recognizes an interest, it must then consider whether nonjoinder would prejudice either the absent party's or the pending parties' rights. *Id.* The First Circuit has distinguished between necessary and indispensable parties in *Stevens v. Loomis,* 334 F.2d 775, 777–78 (1st Cir.1964). It has delineated true indispensable parties as "only those whose interests could not be excluded from the terms or consequences of the judgment and leave anything ... for the judgment effectively to operate on." *Id.* If a court can achieve justice consistent with equity and good conscience without joining the absent party, then the absent party is characterized as a necessary party. *See Washington v. United States,* 87 F.2d 421, 426 (9th Cir.1936). With necessary, rather than indispensable parties, the court has discretion whether to require joinder. *Stevens, supra,* 334 F.2d at 777; *see also* 3A *Moore's Federal Practice* ¶ 19.07[1] (2d ed. 1989). Council 94 need not be joined in this case in order for this Court to enter an effective judgment. The present case does not involve a circumstance where plaintiff challenges the Union's practices. *See Reyes v. Missouri–Kansas–Texas R.R. Co.,* 53 F.R.D. 293, 297 (D.Kan.1971), or where she claims that the collective bargaining agreement discriminates against her. *See Evans v. Sheraton Park Hotel,* 503 F.2d 177, 180–81 (D.C.Cir.1974). Plaintiff challenges only the alleged discriminatory actions of her supervisors as employees of the State. The State can defend itself by asserting (as it does) that there was no discriminatory intent vis a vis plaintiff because it was merely following the seniority rules regarding promotions found in the collective bargaining agreement. Such a defense does not require the Union to be a party because no matter what the result (a finding for plaintiff or the State), the collective bargaining agreement will not be invalidated. In short, the judgment rendered in this case will settle this dispute and have no effect on the Union (except that the State and the Union may have to bargain about such seniority matters in the future). In addition, since the Union is presently representing plaintiff in other employment grievance procedures against the State, it would be inappropriate to join it as a party defendant in this case. It would also be improper to make the Union a party plaintiff against its will. For the reasons stated above, defendant's motion to dismiss the complaint for failure to join the Union is denied.

### B. The Fair Employment Practices Act as pendent claim to Title VII action.

■ Defendant asserts that *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), mandates that federal courts evaluate the federal statute conferring jurisdiction to determine whether Congress intended to allow pendent state claims. Defendant cites two federal courts which have found, under *Kroger,* that pendent state claims interfered with Congress' intent to expedite discrimination cases under Title VII. *Curtin v. Hadco Corp.,* 676 F.Supp. 408 (D.N.H.1987); *Mongeon v. Shellcraft Industries, Inc.,* 590 F.Supp. 956 (D.Vt. 1984).

Pendent claim jurisdiction provides a well-established means of maintaining a state law claim in a federal court action when federal jurisdiction is based on federal law. *Finley v. United States,* —— U.S. ——, 109 S.Ct. 2003, 2006–07, 104 L.Ed.2d 593 (1989); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). When considering whether to extend federal jurisdiction to a state law claim, a federal court must deter-

mine (1) whether the federal claim is of "sufficient substance to confer [federal] subject matter jurisdiction" and (2) whether the federal and state claims arose out of a "common nucleus of operative fact ... which the plaintiff would ordinarily be expected to try in one judicial proceeding." *Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. at 1138. A district court has complete discretion in making this determination but should consider several factors in arriving at a decision on this point. The Supreme Court suggests that when state issues predominate or when jury confusion would arise because of disparite theories of law or relief, a district court should decline jurisdiction. *Id.* at 726–27, 86 S.Ct. at 1139–40. However, a strong argument in favor of pendent jurisdiction exists when the state and federal questions bear a close relationship. *Guyette v. Stauffer Chemical Co.,* 518 F.Supp. 521, 524 (D.N.J.1981). The present case passes *Gibbs* muster. Title VII gives a federal court substantial subject matter jurisdiction. *Id.* In the present case, the Title VII and the FEPA claims arise from the same alleged core of facts. Both claims will involve the same evidence and witnesses, thus, the plaintiff should be expected to try these claims at the same time. Further, the language of Title VII and of the FEPA is sufficiently similar to squelch any fear of jury confusion. *Cf.* 42 U.S.C. § 2000e–2; R.I.Gen.Laws § 28–5–7 (1989).

Many courts, however, contend that *Owen Equipment & Erection Co. v. Kroger, supra,* introduces a third consideration into the *Gibbs* pendent claim analysis. *See, e.g., Jones v. Intermountain Power Project,* 794 F.2d 546, 551–52 (10th Cir. 1986); *Yousef v. Borman Foods, Inc.,* 667 F.Supp. 443, 445 (E.D.Mich.1987); *Curtin v. Hadco Corp., supra,* 676 F.Supp. at 410; *Ritter v. Colorado Interstate Gas Co.,* 593 F.Supp. 1279, 1281 (D.Colo.1984); *Mongeon, supra,* 590 F.Supp. at 958. In *Kroger,* the United States Supreme Court held that no pendent jurisdiction existed over plaintiff's nonfederal claim against an impleaded third party defendant not independently subject to diversity jurisdiction. *Kroger, supra,* 437 U.S. at 376, 98 S.Ct. at

2403–04. Although deciding a pendent *party* issue, the Supreme Court spoke in broad terms. It wrote that beyond the *Gibbs* analysis,

> there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim in order to determine whether 'Congress in [that statute] has ... expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim.

*Id.* at 373, 98 S.Ct. at 2402. (quoting *Aldinger v. Howard,* 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976)).

The First Circuit, in dicta, interjected its belief that *Kroger* applies as equally to pendent claim jurisdiction as it does to pendent party jurisdiction. *Ortiz v. United States,* 595 F.2d 65, 71 n. 9 (1st Cir.1979); *Contra Guyette v. Stauffer Chemical Co.,* 518 F.Supp. 521, 523–24 (D.N.J.1981). In deciding whether a plaintiff could assert a nonfederal as well as a federal claim against a third party defendant, the First Circuit noted that

> [b]ased upon its reading of *Gibbs, Aldinger,* and *Kroger,* the government argues that in the present case we need not consider whether Congress has manifested an intent that jurisdiction not be exercised over the nonfederal claim, only whether Article III [*Gibbs* analysis] bars such jurisdiction. The government contends that congressional intent need only be considered in 'pendent party' cases ... The present case is a 'pendent claim' action, according to the government, because appellants wish to assert a nonfederal claim against a party ... against whom a federal claim (the third party complaint) is pending.

While the approach advocated by the government may seem reasonable in light of *Gibbs* and *Aldinger,* we think our approach may be the correct one when *Kroger* is taken into account. In *Kroger* the court advocated consideration of both Article III and congressional intent without attempting to classify the

case before it as being either a pendent party or a pendent claim action. *Ortiz, supra,* 595 F.2d at 71 n. 9. The First Circuit, however, declined to determine which approach was the correct one. *Id.* Judge Pettine interpreted the *Ortiz* dicta as requiring both a *Gibbs* and a *Kroger* analysis irrespective of whether the issue focused on pendent claim or pendent party jurisdiction. *Amoco Oil Co. v. Local 99, Int'l Brotherhood of Electrical Workers,* 536 F.Supp. 1203, 1221–22 (D.R.I.1982).

The United States Supreme Court has recently addressed the question of *Kroger*'s applicability to pendent *claim* jurisdiction. *Finley v. United States,* — U.S. —, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). In *Finley,* the United States Supreme Court made a clear distinction between pendent claim and pendent party analysis and noted that pendent party analysis requires a more stringent evaluation. *Id.* 109 S.Ct. at 2006–07. The Court stated that "[o]ur cases show, however, that with respect to the addition of parties, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." *Id.* at 2007. The Court further provided that "in a line of cases by now no less well established we have held, *without specific examination of jurisdictional statutes,* that federal courts have 'pendent' claim jurisdiction." *Id.* at 2006 (emphasis added). The Court noted that often where the *Gibbs* analysis would allow the addition of pendent claims, the *Kroger* analysis would still bar jurisdiction over non-diverse defendants. *Id.* at 2007–08.

Since *Finley,* only one district court has commented on the ramifications of that decision. In *640 Broadway Renaissance Co. v. Cuomo,* 714 F.Supp. 686 (S.D.N.Y. 1989), the court stated that "[t]he doctrine of pendent-party jurisdiction provides a much narrower basis for jurisdiction than the doctrine of pendent-claim jurisdiction recognized in *Gibbs.*" *Id.* at 689. Quoting from *Finley,* the court interpreted the *Finley* decision as an explicit declaration of "the non-transferability of *Gibbs* to the

context of pendent-party jurisdiction." *Id.* at 690.

Even if *Finley* does not limit pendent claim analysis to *Gibbs,* this Court concludes that plaintiff's state employment sex discrimination claim meets the jurisdictional criteria of *Kroger.* Although some courts have found that Title VII precludes pendent state claims, this Court finds the contra authority more persuasive.

The cases which have barred pendent state claims point to the congressional intent to expedite Title VII employment discrimination proceedings. *See Mongeon, supra,* 590 F.Supp. at 958. On this basis, courts have dismissed state claims in Title VII suits by finding that the state claims would conflict with Congress' intent to expedite discrimination suits by delaying discovery or by adding confusion with different defenses or unresolved questions of state law. *Id.* at 960; *Curtin, supra,* 676 F.Supp. at 411–12; *Jong–Yul Lim v. International Inst. of Metro. Detroit, Inc.,* 510 F.Supp. 722, 725–26 (E.D.Mich.1981). This rationale does not apply to the instant case, however. As discussed previously, Title VII and the FEPA utilize very similar language and will require very similar evidence. This Court fails to see how the addition of the FEPA claim would cause either delay or confusion in this case.

The courts which have allowed pendent state claims in Title VII actions persuasively find that Congress did not expressly or impliedly negate pendent jurisdiction when it enacted Title VII. *Jones v. Intermountain Power Project,* 794 F.2d 546, 552 (10th Cir.1986); *Flowers v. Rego,* 675 F.Supp. 1165, 1167 (E.D.Ark.1987); *Yousef v. Borman Foods, Inc.,* 667 F.Supp. 443, 445 (E.D.Mich.1987). In *Jones,* the court suggested that "[w]hen Title VII is construed together with the long-standing presumption in favor of pendent jurisdiction and district courts' broad discretion to assume jurisdiction over pendent claims, we find nothing unclear about Title VII.... [W]e have searched the congressional record and concluded that nothing therein shows any more intent to negate the exercise of pendent claim jurisdiction than the language of

Title VII itself." *Jones, supra,* 794 F.2d at 552. *Jones* and its followers, *Yousef* and *Flowers,* also noted that Congress rejected efforts to make Title VII an exclusive remedy. *Id. Jones* cited *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975), which authorized a Title VII claim to be tried with other federal claims which required jury trials and legal remedies. *Id.* As a final point, *Jones* noted that since plaintiffs must file Title VII claims in federal court, Title VII claimants, just as claimants under other exclusively federal claims, should be entitled to try all of their claims together. *Id.* at 553.

This Court follows the *Jones* rationale. The courts barring non-federal claims have stretched the *Kroger* analysis too far by reasoning that Congress' intent to expedite Title VII proceedings has stymied state law claims. This Court opines that under either a *Gibbs* or *Kroger* analysis, plaintiff's state employment discrimination claim should remain in this case and be tried with the Title VII claim.

■ This Court also rejects any contention that Title VII preempts state employment discrimination claims. The First Circuit specifically found that the language of Title VII does not amount to "a clear manifestation of intent to preempt the field." *Associated Gen. Contractors of Mass., Inc., v. Altshuler,* 490 F.2d 9, 15 (1st Cir. 1973), *cert. denied,* 416 U.S. 957, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974). In addition, other federal courts have cited the United States Supreme Court decision in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), for the proposition that Title VII does not preclude other federal or state law claims. *Id.* at 48, 94 S.Ct. at 1019; *see, e.g., Swenson v. Management Recruiters Int'l, Inc.,* 858 F.2d 1304, 1307–08 (8th Cir.1988); *Dickinson v. Chrysler Corp.,* 456 F.Supp. 43, 45–6 (E.D.Mich.1978). The First Circuit noted that the "congressional policy . . . as

expressed in Title VII of the Civil Rights Act of 1964 . . . is clearly one of encouraging state cooperation and initiative in remedying . . . discrimination." *Associated Gen. Contractors, supra,* 490 F.2d at 15. The First Circuit has, likewise, upheld a district court's decision to hear a Puerto Rican anti-discrimination claim with an Age Discrimination in Employment Act claim. *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 609 (1st Cir.1985); 29 U.S.C. §§ 621–634. The court noted that the liability issues were the same and that the claims should be tried together. *Id.*

For the reasons expressed above, defendant's motion to dismiss Count II of the complaint is denied.

C. *Bivens* analysis barring pendent R.I. Constitutional claim.

In Count III of the complaint plaintiff claims that the State's discriminatory conduct also violates the "equal protection" clause now found in the Rhode Island Constitution which became effective in 1986. *See* R.I. Const. Art I, § 2.[1] Plaintiff asserts that the Court should imply a cause of action in tort on behalf of plaintiffs similarly situated under that state equal protection provision. Defendant contends that the Court must apply a *Bivens* analysis to this situation and dismiss the action because plaintiff has other avenues of relief.

■ Although this issue remains undecided by any Rhode Island state court, it appears to this writer that the new "due process" and "equal protection" provisions in Article I, Section 2 create constitutional causes of action against state actors in certain circumstances. *See Jones v. State of Rhode Island,* 724 F.Supp. 25 (D.R.I. 1989). In *Jones* this Court, utilizing a *Bivens* analysis, refused to dismiss a constitutional tort claim under the "due process" clause. *Id.* Similarly, this Court in certain

---

**1.** Article I, section 2 of the R.I. Constitution in pertinent part now provides:

No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws. No otherwise qualified person shall, solely by reason of race, gender or handicap be subject to discrimination by the state, its agents or any person or entity doing business with the State.

circumstances could imply a private right of action for damages under the state "equal protection" clause.

■ However, using the *Bivens* approach in this case for this plaintiff creates two problems. The Supreme Court limited the implied right of action found in *Bivens* to claims against individuals. *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971). Here, plaintiff has sued only the State of Rhode Island. Further, *Bivens* applies only when other alternative remedies are unavailable to redress individual grievances. *Id.*

Since *Bivens*, courts have continued to stress the alternative relief consideration as a bar to *Bivens*-type relief. In *Davis v. Passman*, 442 U.S. 228, 245, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846 (1979), the Supreme Court implied a private right of action under the fifth amendment but again stressed that "there are available no other alternative forms of judicial relief. For Davis, as for Bivens, 'it is damages or nothing'." *Id.* The First Circuit has warned that

> [w]hen there is a request for the judicial creation of a supplemental damages remedy arising directly under a constitutional provision, *Bivens*, we think, teaches that a federal court should proceed with caution. It should carefully assess the existing remedies and consider the extent of (sic) which there has been a Congressional or other determination that the supplemental remedy should not be available.
> *Kostka v. Hogg*, 560 F.2d 37, 42 (1st Cir.1977). (citations omitted)

For example, the Circuit courts have consistently dismissed constitutional claims when the complaint also asserts § 1983 claims, *Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Hearth, Inc. v. Department of Public Welfare*, 617 F.2d 381, 382–83 (5th Cir.1980); *Kostka, supra,* 560 F.2d at 42, and claims under the Age Discrimination in Employment Act. *See Purtill v. Harris*, 658 F.2d 134, 136–37 (3d Cir.1981), *cert. denied sub nom Purtill v. Heckler*, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983). The Third Circuit has held that a Title VII action alleging federal discrimination precluded any additional constitutional claim. *See Gissen v. Tackman*, 537 F.2d 784, 786 (3d Cir.1976) (per curiam). In the present action, plaintiff's Title VII and FEPA claims provide alternative avenues for relief, thus, barring an additional state constitutional claim.

Although Article I, Section 2 of the new Rhode Island Constitution specifically provides that the state shall not discriminate on the basis of race, gender or handicap, plaintiff, curiously chose to sue only under the "equal protection" clause. This Court, therefore, need not evaluate whether the new anti-discrimination clause provides a distinct constitutional cause of action for the discriminatory conduct proscribed thereunder. In any event, it would appear, applying the *Bivens* approach, that such an action should not be allowed because of adequate statutory remedies available to a claimant.

For the reasons expressed above, defendant's motion to dismiss Count III of the complaint is granted.

## SUMMARY

Defendant's motion to dismiss plaintiff's complaint for failure to join the Union is denied. Defendant's motion to dismiss plaintiff's FEPA claim (Count II) is denied. Defendant's motion to dismiss plaintiff's state constitutional equal protection claim (Count III) is granted.

*It is so Ordered.*