**Luther E. JONES, Plaintiff-Appellant,**

v.

**INTERMOUNTAIN POWER PROJECT, Intermountain Power Agency, Department of Water and Power, City of Los Angeles, Black & Veatch, Diane Hill, Candice Corbett, and John Does 1–10, Defendants-Appellees.**

**Luther E. JONES, Plaintiff-Appellee,**

v.

**INTERMOUNTAIN POWER PROJECT, Intermountain Power Agency, Department of Water and Power, City of Los Angeles, Diane Hill, Candice Corbet, and John Does 1–10, Defendants,**

**Black & Veatch, Defendant-Appellant.**

Nos. 84–2450, 84–2455.

United States Court of Appeals, Tenth Circuit.

June 16, 1986.

Rehearing Denied in No. 84–2450 July 7, 1986.

Robert J. DeBry (Warren W. Driggs and David M. Jorgensen with him on briefs), of Robert J. DeBry & Associates, Salt Lake City, Utah, for plaintiff-appellant/cross-appellee.

George A. Hunt, of Snow, Christensen & Martineau, Salt Lake City, Utah, for defendants-appellees/cross-appellant.

Before HOLLOWAY, Chief Judge, McWILLIAMS and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Intermountain Power Agency (IPA) constructed and owns the Intermountain Power Project, a large power plant in Southern Utah. The plant was designed by Black & Veatch, an engineering firm. Before construction on the plant began, IPA and Black & Veatch entered into a "site assistance agreement" whereby Black & Veatch would hire certain employees to work at the construction site. Though Black & Veatch paid these employees, it was agreed that they would be under the direction of IPA supervisors and would be ultimately transferred to IPA's payroll.

Pursuant to this agreement, Black & Veatch hired Mr. Luther Jones as the "risk and loss prevention manager" at the construction site. Several months later, a newspaper reporter informed Mr. Rodney Clark, IPA's project manager at the construction site and Mr. Jones' superior, that she had heard that Mr. Jones was sexually harassing female employees. Mr. Clark interviewed the employees who allegedly had been harassed by Mr. Jones and concluded that the allegations were true. Mr. Clark did not, however, speak to Mr. Jones regarding the allegations. Mr. Clark reported his findings to the Black & Veatch representative on the jobsite, who, in turn, relayed the information to Black & Veatch's main office. A Black & Veatch official directed Mr. Clark to investigate further, and stated that if the investigation showed substantial evidence that Mr. Jones had been harassing employees, he would be terminated immediately. After further investigation substantiated Mr. Clark's earlier findings, he requested Black & Veatch to terminate Mr. Jones, which it did.

Mr. Jones brought this action against IPA and Black & Veatch alleging violations of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq. He also brought two state claims: one against IPA for tortiously interfering with his employment contract, and one against Black & Veatch for breaching his employment contract. The jury found for Mr. Jones on both state claims. The trial court, however, vacated

the judgment against IPA on the basis that the evidence, as a matter of law, did not establish a claim for tortious interference with Mr. Jones' employment contract. The Title VII claim was not submitted to the jury. The court determined that Mr. Jones failed both as a matter of law and as a matter of fact to establish a Title VII violation.

### I.

In its cross appeal, Black & Veatch contends that the trial court erred in exercising pendent jurisdiction over the state claims. The question whether federal courts should exercise pendent jurisdiction over state law claims sharing a common nucleus of operative fact with a Title VII claim is one of first impression in this circuit. Although this question has divided the federal district courts, *compare, e.g., Mongeon v. Shellcraft Industries, Inc.,* 590 F.Supp. 956 (D.Vermont 1984), *with, e.g., Guyette v. Stauffer Chemical Co.,* 518 F.Supp. 521 (D.N.J.1981), two federal circuit courts that have considered it have upheld the exercise of pendent jurisdiction. *Phillips v. Smalley Maintenance Services, Inc.,* 711 F.2d 1524 (11th Cir.1983); *Meyer v. California and Hawaiian Sugar Co.,* 662 F.2d 637 (9th Cir.1981). *But see Grubb v. W.A. Foote Memorial Hospital, Inc.,* 741 F.2d 1486, 1499–1500 (6th Cir.1984) (district court did not abuse its discretion when it did not exercise its pendent jurisdiction over a state claim because ruling on the merits of the claim would have required the district court to announce new state-law principles, a function comity dictates to be left to the state courts).

In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court articulated a two-pronged test for determining when a federal court should exercise jurisdiction over a pendent state claim. Under the first prong of the *Gibbs* test, the federal court must have constitutional power to exercise pendent jurisdiction. This power exists when there is a substantial federal claim and when both the state and federal claims derive from a common nucleus of facts so that plaintiff would "ordinarily be expected to try them all in one judicial proceeding." *Id.* at 725, 86 S.Ct. at 1138.

A substantial federal claim is one that has "substance sufficient to confer subject matter jurisdiction on the court." *Id.* The district court lacks subject-matter jurisdiction when the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). As the Ninth Circuit noted:

> If a federal claim against a party is dismissed before trial, the pendent state law claims should often be dismissed as well. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 [86 S.Ct. 1130, 1138, 16 L.Ed.2d 218] (1966). Once a trial is held, however, this court will order dismissal of a pendent claim on remand *only when the federal cause of action was so insubstantial and devoid of merit that there was no federal jurisdiction to hear it.* If the federal claim was not frivolous, it was a matter of trial court discretion whether to hear the state claims.... *See Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1973).

*Traver v. Meshriy,* 627 F.2d 934, 939 (9th Cir.1980) (emphasis added).

Though Mr. Jones' Title VII claim is tenuous, it was not "so insubstantial, implausible, foreclosed by prior decisions ... or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, [regardless of] the ultimate resolution of the federal issues on the merits." *Hagans v. Lavine,* 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974) (quoting *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–67, 94 S.Ct. 772, 776–77, 39 L.Ed.2d 73 (1974)). Because all of Mr. Jones' claims arose out of the same set of operative facts, we conclude that, under the first prong of the *Gibbs* test, the trial

court had the constitutional power to hear all of Mr. Jones' claims.

 The second prong of the *Gibbs* test focuses on the trial court's discretion to exercise its power. Under this prong, the trial court should consider several factors such as judicial economy, convenience, and fairness to the litigants. *Id.* 383 U.S. at 726, 86 S.Ct. at 1139. Here, as in *Phillips v. Smalley Maintenance Services, Inc., supra,* at 1531:

> A refusal to exercise pendent jurisdiction ... would have required substantially duplicative proceedings in federal and state courts. Witnesses would have been forced to testify twice to the same facts. Overall, the "considerations of judicial economy, convenience and fairness to litigants" as well as to other participants justified the exercise of pendent jurisdiction.

Because the jury rendered its verdict on the state claims before the trial court issued its opinion as to the Title VII claim, it would be extremely inefficient, inconvenient and unfair to the litigants and the other participants in the trial for us to hold now that the district court improperly exercised its pendent jurisdiction. A federal court justifiably may retain jurisdiction of the pendent claims if substantial time and energy have been expended on the case prior to disposition of the federal claims. *Transok Pipeline Co. v. Darks,* 565 F.2d 1150, 1155 (10th Cir.1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *see also Rosado v. Wyman,* 397 U.S. 397, 404, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970). Additionally, Mr. Jones' complaint does not pose novel or unsettled questions of state law.

 Although it is clear that, under *Gibbs,* the trial court properly exercised its discretion to hear the state claims, defendants contend that *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), added a third prong to the two-pronged test set forth in *Gibbs.* Under this prong, defendants argue, "a federal court must satisfy itself not only that Art. III permits [pendent jurisdiction], but that Congress in

the statutes conferring jurisdiction has not expressly or by implication negated its existence." 427 U.S. at 18, 96 S.Ct. at 2422; *see also Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). The district courts that have declined to exercise pendent jurisdiction in Title VII cases have usually relied on this third prong, noting principally that Congress intended Title VII cases "to be in every way expedited," 42 U.S.C. § 2000e–5(f)(5) (1982), and that joinder of state law claims would conflict with that goal. *See, e.g., Mongeon v. Shellcraft Industries, Inc.,* 590 F.Supp. 956, 958 (D.Vermont 1984); *Haroldson v. Hospitality Systems, Inc.,* 596 F.Supp. 1460, 1460–61 (D.Colo.1984).

Mr. Jones contends that *Aldinger* does not apply in this case because *Aldinger* concerned "pendent parties" and not "pendent claims." He argues that, when there are no "pendent parties" involved, only the *Gibbs* test need be satisfied. Language in *Aldinger* supports Mr. Jones' contention. There, the Supreme Court expressly limited its holding to " 'pendent party' jurisdiction with respect to a claim brought under §§ 1343(3) and 1983." 427 U.S. at 18, 96 S.Ct. at 2422. The Court also noted significant analytical differences between "pendent claim" jurisdiction and "pendent party" jurisdiction.

The situation with respect to the joining of a new party, however, strikes us as being both factually and legally different from the situation facing the Court in *Gibbs* and its predecessors. From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of the state-law claim over

which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative fact." [*Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138]. ... [T]he addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.

. . . .

[T]he extension of *Gibbs* to this kind of "pendent party" jurisdiction ... presents rather different statutory jurisdictional considerations. ... The question here, which it was not necessary to address in *Gibbs* or *Osborne*, is whether by virtue of the statutory grant of subject-matter jurisdiction, upon which petitioner's principal claim against the treasurer rests, Congress has addressed itself to the *party* as to whom jurisdiction pendent to the principal claim is sought.

427 U.S. at 14–16, 96 S.Ct. at 2420–21 (emphasis in original). Finally, the Court noted that in a "pendent party" case, "there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim." *Id.* at 18, 96 S.Ct. at 2422.

Though Mr. Jones' argument is reasonable and persuasive in light of *Gibbs* and *Aldinger*, the Supreme Court's more recent announcement in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), presents a hurdle too high for Mr. Jones to clear. In *Owen*, an Iowa citizen, Kroger, sued Omaha Public Power District (OPPD), basing jurisdiction on diversity of citizenship. OPPD then impleaded Owen, a corporation whose principal place of business was in Iowa. Thereafter, Kroger was granted leave to file an amended complaint naming Owen as an additional defendant. Though federal jurisdiction clearly existed as to OPPD's third-party claim against Owen, Owen moved to dismiss the complaint because Kroger and Owen were both citizens

of Iowa and, therefore, the court lacked diversity jurisdiction. An equally-divided court of appeals affirmed the district court's assertion of jurisdiction under *Gibbs*. The Supreme Court reversed, holding that, on these facts, pendent jurisdiction did not exist over Kroger's claim against Owen. After noting that *Gibbs* delineated the constitutional limits of federal judicial power, the Court said:

> *Aldinger* ... makes[s] clear that a finding that federal and nonfederal claims arise from a "common nucleus of operative fact," the test of *Gibbs*, does not end the inquiry into whether a federal court has power to hear the nonfederal claims along with the federal ones. Beyond this constitutional minimum, there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether "Congress in [that statute] has ... expressly or by implication negated" the exercise of jurisdiction over the particular nonfederal claim.

437 U.S. at 373, 98 S.Ct. at 2402 (quoting *Aldinger*, 427 U.S. at 18, 96 S.Ct. at 2422) (footnote omitted).

The Seventh Circuit has analyzed the *Gibbs, Aldinger, Owen* trilogy and concluded that the three-pronged test applies to both "pendent claim" and "pendent party" cases. *United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 440 (7th Cir.1982). The First Circuit in *Ortiz v. United States*, 595 F.2d 65 (1st Cir.1979), agreed in dictum that, when *Kroger* is taken into account, a federal court must consider whether Congress has manifested an intent to negate jurisdiction in "pendent claim" cases. *Id.* at 71 n. 9. *See also Ambromavage v. United Mine Workers of America*, 726 F.2d 972 (3d Cir.1984) (examining congressional intent in a "pendent claim" case). In addition, at least three district courts in this circuit have employed the *Aldinger-Owen* analysis in "pendent claim" cases. *Chavez v. Guaranty Bank & Trust Co.*, 607 F.Supp. 484 (D.Colo.1985); *Haroldson v. Hospitality Systems, Inc.*, 596 F.Supp.

1460 (D.Colo.1984); *Ritter v. Colorado Interstate Gas Co.,* 593 F.Supp. 1279 (D.Colo. 1984).

■ We agree with those cases recognizing the necessity to examine the underlying statutory grant of jurisdiction in "pendent claim" cases. To refuse to make such an examination ignores the fundamental principles that the subject-matter jurisdiction of the federal courts is limited by Article III of the Constitution and whatever enabling legislation Congress chooses to enact and that federal courts "must scrupulously observe the precise jurisdictional limits prescribed by Congress." *Commodity Futures Trading Commission v. Nahas,* 738 F.2d 487, 492 n. 9 (D.C.Cir.1984); *see also Insurance Corp. of Ireland v. Compagnie de Bauxites de Guinee,* 456 U.S. 694, 701–02, 102 S.Ct. 2099, 2103–04, 72 L.Ed.2d 492 (1982).

■ If a statute is clear on its face, there is no necessity to look to legislative history. However, if a statute is ambiguous or leaves open the question of legislative intent, then the legislative history is relevant. When the statute is, standing alone or in conjunction with other statutes, ambiguous as to legislative intent, although often hard to divine from the legislative record, we will fill in the interstices from what the congressional record indicates to the extent that the congressional record itself is clearer than the words of the statute.

■ Our "examination of the ... specific statute that confers jurisdiction over the federal claim," *Owen,* 437 U.S. at 373, 98 S.Ct. at 2402, reveals nothing to suggest an intent to negate pendent jurisdiction. *See* 42 U.S.C. § 2000e–5(f)(3) (1982). When Title VII is construed together with the long-standing presumption in favor of pendent jurisdiction and district courts' broad discretion to assume jurisdiction over pendent claims, we find nothing unclear about Title VII. Against the backdrop of the volume of pendent jurisdiction cases, one would be surprised if Congress did not deal expressly with the issue if it intended to change the general law. It did not do so here.

Though our inquiry could appropriately end here, out of an abundance of caution we have searched the congressional record and concluded that nothing therein shows any more intent to negate the exercise of pendent claim jurisdiction than the language of Title VII itself. Moreover, Congress has twice rejected amendments making Title VII an exclusive remedy. *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1974); *see also Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48 n. 9, 94 S.Ct. 1011, 1019–20 n. 9, 39 L.Ed.2d 147 (1974). Additionally, the Supreme Court has held that Title VII claims may be joined with other federal claims for discrimination even though the other federal claims provide for a jury trial and a full range of legal as well as equitable remedies. *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975) (42 U.S.C. § 1981). In light of this evidence, we disagree with those federal district courts, including two district courts in our circuit, that have concluded that Congress implicitly denied pendent jurisdiction in private actions under Title VII. *See, e.g., Chavez v. Guaranty Bank & Trust Co., supra; Haroldson v. Hospitality Systems, Inc., supra; Jong-Yul Lim v. International Institute of Metropolitan Detroit, Inc.,* 510 F.Supp. 722 (E.D.Mich.1981).

That Congress intended Title VII cases to be "in every way expedited" does not, in our view, mean that Congress implicitly negated the exercise of jurisdiction over non-Title VII claims. This argument ignores the Supreme Court's decisions holding that Title VII claims may be joined with other federal claims. The notion that expedited disposition is one of the congressional objectives in Title VII cases is too thin a reed on which to hang some imagined congressional intent to repeal pendent claims jurisdiction.

There is another significant reason why we believe the trial court properly exer-

cised its discretion in assuming jurisdiction over the state claims. Because Title VII claims can be filed only in federal courts, *Valenzuela v. Kraft, Inc.*, 739 F.2d 434 (9th Cir.1984), Title VII claimants cannot have all of their claims heard together unless they can join their state claims with their Title VII claims. We have previously allowed pendent jurisdiction in cases where the statute confers exclusive jurisdiction over the federal claim, reasoning that only in federal court may all the claims be tried together. *See, e.g., Stewart v. United States*, 716 F.2d 755, 757–59 (10th Cir. 1982), *cert. denied,* —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984); *Transok Pipeline Company v. Darks*, 565 F.2d 1150, 1154 (10th Cir.1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978). We are not faced with a situation where " 'the efficiency [that] plaintiff seeks so avidly is available without question in the state courts.' " *Owen,* 437 U.S. at 376, 98 S.Ct. at 2404 (quoting *Kenrose Manufacturing Co. v. Fred Whitaker Co.*, 512 F.2d 890, 894 (4th Cir.1972)). The Court in *Aldinger* indicated that its decision might have been different had a denial of pendent jurisdiction left plaintiff with no recourse but to pursue her case in two forums:

> Other statutory grants ... might call for a different result. When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all the claims be tried together.

*Aldinger v. Howard,* 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976) (emphasis in original). We are unwilling to require Title VII claimants who have pendent state claims to bifurcate their cases.

## II.

■ Black & Veatch contends that there is no specific evidence that it contracted to employ Mr. Jones for the duration of the construction of the Intermountain Power Project, a period from seven to nine years. Thus, it argues, the evidence was insufficient to overcome the presumption that the contract was terminable at will. The record, however, establishes otherwise. Mr. Dan McCarthy interviewed Mr. Jones for the job and told him that the position for which he was applying would last for the duration of the construction project. Although Mr. McCarthy was not an employee of Black & Veatch, there was a Black & Veatch employee present when these statements were made who did not repudiate this representation. In addition, Mr. John Gaspin, manager of construction services for Black & Veatch, testified that it was Black & Veatch's intent that Mr. Jones be hired for the duration of the project. Finally, Mr. Jones' performance appraisal, which was filled out and signed by a management level Black & Veatch employee, shows the schedule for accomplishment of Mr. Jones' goals and objectives as "1982–1989," the then-projected duration of the project. Thus, we agree with the trial court that there was sufficient evidence to support the conclusion that the employment contract was intended to continue until completion of the construction project.

■ Black & Veatch also contends that, because the Utah Supreme Court had not decided whether Utah law recognizes an implied employment contract for a fixed term, the trial court erred in formulating a special verdict form and submitting it to the jury to determine whether an implied contract had been entered into for a fixed term of employment. The Utah Supreme Court has recognized that a contract or a term of a contract can be implied by the surrounding circumstances. *See, e.g., Held v. American Linen Supply Co.*, 6 Utah 2d 106, 108–09, 307 P.2d 210, 211–12 (1957); *Kimball Elevator Co. v. Elevator Supplies Co.*, 2 Utah 2d 289, 292, 272 P.2d 583, 585 (1954). Additionally, in *Bihlmaier v. Carson,* 603 P.2d 790 (Utah 1979), the Utah Supreme Court stated that employment contracts are terminable at will only "in the absence of some further express *or implied* stipulation as to the duration of the

employment...." *Id.* at 792 (emphasis added). These cases indicate to us that, given the opportunity, the Utah Supreme Court would recognize an implied contract of employment for a fixed term.

## III.

■ Black & Veatch also contends that the trial court erred in admitting expert testimony relating to Mr. Jones' alleged damages. It contends there was no proper foundation for this testimony. After reviewing the record, we conclude that the trial court did not abuse the broad discretion given it in determining whether to admit expert testimony. *Ramsey v. Culpepper,* 738 F.2d 1092 (10th Cir.1984).

## IV.

In Mr. Jones' appeal, he contends that the trial court erred in granting IPA's motion for judgment notwithstanding the verdict as to his claim for tortious interference with a contract. The issue presented is whether IPA was privileged to interfere with Mr. Jones' contract with Black & Veatch.

■ We observe that IPA claims that the issue is not whether it was privileged to interfere with the contract; rather, the issue is whether, in light of the Utah Supreme Court's decision in *Leigh Furniture and Carpet Co. v. Isom,* 657 P.2d 293 (Utah 1982), Mr. Jones failed to show that IPA acted with either an improper motive (or purpose) or an improper means. In *Isom,* the Utah Supreme Court for the first time recognized a cause of action for "intentional interference with *prospective economic relations.*" Regarding this tort, the court stated:

> [I]n order to recover damages, the plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff. Privilege is an affirmative defense, *Searle v. Johnson,* Utah, 646 P.2d 682 (1982), which does not become an issue unless "the acts charged would be

tortious on the part of an unprivileged defendant." *Top Service Body Shop, Inc.,* 283 Or. at 210, 582 P.2d at 1371. *Id.* at 304. In the instant case, we deal with the tort of interference with an *existing contract.* In *Isom,* the court noted that its prior decisions placed a lighter burden on a plaintiff with respect to this tort, which does not require the plaintiff to prove that the defendant acted with an improper purpose or by improper means. With regard to interference with an existing contract, the *Isom* court said that a plaintiff need only prove a prima facie case of liability, *i.e.,* that the defendant intentionally interfered with the plaintiff's existing contractual relations. "[T]he burden of going forward then shifts to the defendant to demonstrate as an affirmative defense that under the circumstances his conduct, otherwise culpable, was justified and therefore privileged." *Id.* at 302 (footnote omitted). Because we find that IPA was privileged to interfere with Mr. Jones' employment contract, we need not reach the issue whether the burden of proof in an action for intentional interference with prospective economic relations applies to a cause of action for intentional interference with existing contractual relations.

In *Bunnell v. Bills,* 13 Utah 2d, 83, 90, 368 P.2d 597, 602–03 (1962), the Utah Supreme Court stated:

> It is generally recognized in a majority of jurisdictions that one who persuades another ... to breach a contract is guilty of an actionable tort, unless such persuasion or other action causing the breach was done with just cause of excuse. [footnote omitted]. It is also generally recognized that even though a defendant's action brings about a breach of contract, he is not liable where the breach was caused by the doing of an act which he had a legal right to do. [footnote omitted]. This rule is applied by Prosser in his Law of Torts, page 737, Sec. 106, as follows:
>
> > "If (defendant) has a present, existing economic interest to protect, such as the ownership or condition of prop-

erty, or prior contract of his own, or a financial interest in the affairs of the person persuaded, he is privileged to prevent performance of the contract of another which threatens it...."

The trial court accurately described the relationship between Black & Veatch and IPA:

The undisputed evidence shows that B & V and IPA enjoyed an engineer-client relationship, that pursuant to that relationship they entered into a site assistance agreement whereby B & V would employ personnel for the benefit of IPA, until IPA was administratively able to employ these individuals itself. Plaintiff was hired pursuant to this agreement and, although technically employed by B & V, he was supervised by Rod Clark and worked for the benefit of IPA.

Record, vol. 2, at 194.

Nothing in the record suggests that Mr. Clark misrepresented facts or the extent of his investigation to Black & Veatch. Nor did he threaten to end the contractual relationship between Black & Veatch and IPA or use any other improper means to effectuate Mr. Jones' removal. IPA was appropriately concerned about the adverse public relations effects as well as possible liabilities arising from Mr. Jones' alleged improper conduct. We agree with the trial court that "considering this legitimate business interest, the engineer-client relationship between B & V and IPA and the nature of the site assistance agreement, Mr. Clark was justified in making his recommendations concerning plaintiff's removal from the site." Record, vol. 2 at 195.

V.

Finally, Mr. Jones appeals the trial court's ruling on his Title VII claim. In essence, he attempts with that claim to convert a borderline sexual harassment case against himself into a sexual discrimination case against Black & Veatch and IPA because their "concerns about the females' accusations far outweighed any desire to treat [Mr. Jones] fairly" and "because of the one-sided investigation, not just the termination which resulted." Responding/Reply Brief of Appellant at 8. We agree with the trial court that Mr. Jones' Title VII claim is insufficient both as a matter of law and as a matter of fact. In addition to failing to make out a prima facie case of discrimination, there was a rational, nondiscriminatory reason for Mr. Jones' discharge. There was no showing that such reason was pretextual. Mr. Jones was not replaced by a female; and there was no evidence indicating that, under the same circumstances, a female would have been treated any differently than was Mr. Jones.

AFFIRMED.