968 F.2d 22
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Rafaela WENTZ, individually and Rafaela Wentz, as guardian
and as guardian ad litem for Kevin Rodman,
Plaintiff-Appellant,
v.
PARK COUNTY SCHOOL DISTRICT NO. 16; George Lewis Barrus,
Defendants-Appellees.
 No. 91-8042.
 United States Court of Appeals, Tenth Circuit.
 June 26, 1992.
 
 Before STEPHEN H. ANDERSON and BALDOCK, Circuit Judges, and CONWAY,* District Judge.
 ORDER AND JUDGMENT**
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Rafaela Wentz, individually and as guardian and guardian ad litem for Kevin Rodman, appeals from a summary judgment in favor of Defendants Park County School District No. 16 (the District) and George Lewis Barrus. The issues are whether genuine issues of material fact exist that preclude entry of summary judgment on Plaintiff's 42 U.S.C. § 1983 claim, and whether the district court erred in dismissing the state law claims against Barrus and entering summary judgment on the state law claims against the District. We affirm dismissal of the § 1983 claim. Because we conclude that no substantial federal claim was asserted, we affirm dismissal of the state law claims against Barrus, and vacate summary judgment on the state law claims against the District.
 
 
 3
 Rodman, whose date of birth is December 31, 1974, was at all relevant times a student at the Meeteetse School, which is within the District. Barrus had been a teacher at that school since 1965, and was employed by the District. Plaintiff is Rodman's mother.
 
 
 4
 Before the incident in question, at Plaintiff's request, Rodman and Barrus developed a friendship. They spent time together outside of school, and Barrus acted as a father figure. On or about July 1, 1989, Rodman went to Barrus's house to watch video movies and spend the night. At the time, Barrus and Rodman were employed by the United States Forest Service. Barrus was on summer vacation. His teaching contract had terminated in May and the next contract did not commence until August. He owed no duties to the District at the time. That night, Barrus allegedly entered Rodman's room, told Rodman what he was doing was "educational," and proceeded to sexually assault Rodman. Barrus had never made any sexual advances toward Rodman before the incident.
 
 
 5
 On November 6, 1990, Plaintiff commenced this action, alleging claims against the District and Barrus under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988[1] and state law claims against the District and Barrus. The district court granted the District's motion for summary judgment as to all claims against the District, granted Barrus's motion for summary judgment on the federal claims against him, and dismissed the state law claims against Barrus without prejudice.
 
 
 6
 Summary judgment may be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We review a grant of summary judgment de novo. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). We apply the same standard as the district court and determine whether a genuine issue of material fact is disputed; if not, we determine whether the moving party is entitled to judgment as a matter of law. Id.
 
 
 7
 Section 1983 provides that any person who acts under color of state law to deprive a citizen of any rights, privileges, or immunities secured by the U.S. Constitution and laws, is liable to the injured party. The parties dispute whether Defendants acted under color of state law to deprive Rodman of his constitutional right to personal privacy and bodily security.
 
 
 8
 Plaintiff appears to argue that Barrus was acting under color of state law when he assaulted Rodman because he was a continuing contract teacher. In D.T. ex rel. M.T. v. Independent School District No. 16, 894 F.2d 1176 (10th Cir.), cert. denied, 111 S.Ct. 213 (1990), minor plaintiffs alleged that a teacher, Epps, sexually molested them during summer basketball camp. Epps was on summer vacation at the time. As such, he had no duties or obligations owed to, or functions to perform for, the school district. His contract required that he teach from August through May. His activities associated with the summer basketball camps were not school related. Id. at 1186.
 
 
 9
 In D.T., we recognized that the "[a]cts of a state officer in the ambit of his personal pursuits are not acts under color of state law." Id. We agreed that the events " 'were the product of a private individual acting in his private capacity in connection with a private activity that the plaintiffs voluntarily and freely participated in as private individuals.' " Id. (quoting Reply Brief of Appellant, No. 88-1619, p. 10). We rejected the argument that Epps' acts could be attributed to state law because he acted under the "cloak of authority" held by a teacher as there was no evidence of any nexus between the activity in which he was involved at the time of the assaults and his duties and obligations to the school district. Id. at 1188.
 
 
 10
 We noted that Epps' status was similar to that of an off-duty police officer acting as a security guard, although the comparison was tenuous because Epps was not performing any duties or functions as a teacher and was completely free of all contractual obligations to the school district when the assaults occurred. Id. at 1190. Off-duty police officers were found to be acting under color of state law where the police department sponsored or encouraged their off-duty activities. Id. at 1191. However, no state action was found where the employer had no control over, involvement in, or direct responsibility for the actions of the off-duty police officers, or where those officers were acting only in the ambit of their personal pursuits and were not performing any duty imposed upon them by the state. Id. Epps' situation more closely resembled the latter category of cases. We concluded that no state action was involved when Epps molested the plaintiffs. Id. at 1192.
 
 
 11
 The off-duty police officer cases illustrate that it is not an actor's employment status, but rather whether the employer has control over, involvement in, or responsibility for the actor's actions that determines whether state action is involved. Here there is no evidence of such control, involvement, or responsibility. Barrus was not acting under color of state law when the alleged sexual assault occurred.
 
 
 12
 Plaintiff argues that the District deprived her of constitutional rights under color of state law because it had a policy, custom, or practice of failing to investigate and report suspected sexual abuse of children, which allowed Barrus to sexually assault Rodman. A school district is not liable for a teacher's actions on a respondeat superior theory. Id. at 1187. Rather, a district "is liable for constitutional torts only if the alleged unconstitutional acts implement a policy, ordinance or custom of the [district]." Id. (citing Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978)). A plaintiff must demonstrate "a direct nexus between the constitutional torts ... and the School District's authorization or approval thereof, either expressly or otherwise, by the adoption of any plan or policy." Id. "[T]he policy must be a deliberate choice of action 'with respect to the subject matter in question.' " Id. at 1189 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (emphasis not in original)).
 
 
 13
 In D.T., the plaintiffs alleged that the school district had a policy of hiring teachers without properly investigating reports of past sexual abuse. Id. at 1187. We recognized that Stoneking v. Bradford Area School District, 882 F.2d 720 (3d Cir.1989), cert. denied, 493 U.S. 1044 (1990), held a former high school student, who had been sexually abused by the school band director during school hours while the band director was on school business, could maintain a § 1983 action against the school district and its principal and assistant principal, based on their policy, practice, or custom of reckless indifference to instances of known or suspected sexual abuse of students by teachers. 894 F.2d at 1189. There, the principal and assistant principal had received at least five complaints of sexual assaults of students by teachers and staff members which were repressed and concealed. 882 F.2d 728-29.
 
 
 14
 We distinguished Stoneking on the grounds that the acts of molestation in D.T. were not committed during school hours on school business, the school district had not concealed or attempted to cover up any child abuse complaints, and there was no evidence the district was aware of any child molestation acts committed by Epps other than one report that Epps had denied. 894 F.2d at 1190. We concluded that the constitutional violation in D.T. was too remote a consequence of the hiring and investigation policy to impose liability on the district. Id. at 1189.
 
 
 15
 Here, as in D.T., the sexual act was not committed during school hours on school business. Further, as explained more fully below, there is no evidence that the District concealed or attempted to cover up any child abuse complaints against school children or was aware of any child molestation acts committed by Barrus until the incident at issue in this lawsuit. D.T. compels the conclusion that no state action was involved when Barrus molested Rodman.
 
 
 16
 Plaintiff next argues that the District had a policy of deliberate indifference to complaints of sexual assault and sexual harassment of young boys by Barrus. To establish such a claim, a plaintiff must show that a consciously adopted policy reflects, in a causal sense, deliberate indifference to the plaintiff's constitutional rights. Id. at 1193.
 
 
 17
 In D.T., the district had received a report that Epps had sexually assaulted a young boy and had heard rumors of sexual abuse and homosexuality. Id. at 1179-81. We concluded there was insufficient evidence of deliberate indifference to the complaints, id. at 1193, where the district confronted Epps about the abuse allegation, which he denied; contacted officials from other school districts where Epps had worked; and observed him in school. Id. at 1180.
 
 
 18
 Here, the evidence is similarly lacking. Doyle Braten, a school board member from 1981 through 1984, developed a relationship with Barrus when he, Braten, was a twelve-year-old student, in about 1966. Barrus supplied Braten with alcoholic beverages and kissed him as one would kiss a girlfriend. However, Braten did not reveal this information until after the present lawsuit was filed. Sometime between 1962 and 1971, the then-school superintendent, Raymond Carlin, obtained a letter written by Barrus to a young boy, Dewey Farmer, stating that Barrus loved Farmer. Carlin discussed the letter with the school board but does not remember if he read the letter, summarized it, or even if he had it in his possession. He did not know whether the letter was actually sent to the boy. The board told him that he should not have read the letter, and took no action on the letter.
 
 
 19
 Some teachers and parents learned that Barrus was telling students vulgar jokes. When Ricky Westbrook complained to then-principal James Owens, Owens talked to Barrus and Barrus promised it would not happen again. When Superintendent Glenn Schimke became aware of the jokes, he discussed the matter and the District's sexual harassment policy with Barrus. Barrus sent a sexually suggestive card to Tracy Fernandez's school-age son. School board member Bill Slinker knew about the card, but there is no evidence when he learned about the card or whether he was a school board member at the time.
 
 
 20
 School board member Audrey Smith heard a student state that he would not play basketball anymore because Barrus, who coached basketball, was a "queer." She had heard rumors for years that Barrus was a homosexual. Michael McFarland was at Barrus's home about twenty-five years ago. Barrus placed his hands on McFarland's. Although McFarland did not interpret the action as sexual, the incident gave him an ill feeling. However, there is no evidence that any member of the District ever learned of this incident. Finally, Virginia Friedemann was told by a Mrs. Patterson that Patterson's son told her Barrus tried to molest him during a trip to Seattle. Again, there is no evidence the District knew about the incident.
 
 
 21
 The evidence is undisputed that when the principal and superintendent learned Barrus was telling students off-color jokes, they discussed the matter with Barrus. Thus, the District did not have a policy of ignoring such behavior. That board members failed to respond to rumors that Barrus was a homosexual, absent knowledge of inappropriate conduct, hardly constitutes evidence of a policy or custom of deliberate indifference to sexual abuse. The evidence concerning the letter to Dewey Farmer is too vague and uncertain to support a conclusion that anything improper had occurred. Finally, unlike D.T., there is no evidence that the District received any complaints of actual sexual abuse by Barrus.[2] We conclude that the undisputed facts were insufficient to establish that the District had a policy of ignoring sexual harassment or abuse complaints that constituted deliberate indifference to Rodman's constitutional rights.
 
 
 22
 The district court dismissed the state law claims against Barrus on the ground that it no longer had subject matter jurisdiction over those claims. Whether to exercise pendent jurisdiction over state law claims is discretionary. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).[3] However, a federal court first must have constitutional power to exercise pendent jurisdiction. Jones v. Intermountain Power Project, 794 F.2d 546, 549 (10th Cir.1986). This power exists if there is a substantial federal claim. Id. A federal claim is insubstantial if it is " ' "so ... implausible, foreclosed by prior decisions ... or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court....," ' " id. (quoting Hagans v. Lavine, 415 U.S. 528, 543 (1974) (quoting Oneida Indian Nation v. Oneida County, 414 U.S. 661, 666-67 (1974))), is obviously without merit, wholly frivolous, or clearly foreclosed by prior United States Supreme Court decisions. Plott v. Griffiths, 938 F.2d 164, 167 (10th Cir.1991).[4] If that test is met, then the district court, after considering the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness, has discretion to exercise jurisdiction over the state law claims. Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir.1990).
 
 
 23
 It is unclear whether the district court determined that the federal claim was insubstantial. On the one hand, it decided the state law claims against the District on their merits, which it could not do unless it had jurisdiction to do so. On the other hand, it concluded that it no longer had jurisdiction over the state law claims against Barrus.
 
 
 24
 We conclude that the federal claim was insubstantial, foreclosed by our decision in D.T., which was decided January 25, 1990, and the United States Supreme Court cases on which it relied.[5] See Carey v. Continental Airlines, Inc., 823 F.2d 1402, 1404 (10th Cir.1987). The district court therefore correctly declined to exercise pendent jurisdiction to hear the state law claims against Barrus.[6] However, this determination also means that we must vacate that court's resolution of the state law claims against the District. See id. at 1404-05.
 
 
 25
 We decline to impose sanctions against Plaintiff.
 
 
 26
 The judgment of the United States District Court for the District of Wyoming granting summary judgment on the federal claims and dismissing the state law claims against Barrus without prejudice is AFFIRMED. The judgment granting summary judgment as to the remaining state law claims against the District is VACATED, and the cause is REMANDED for dismissal of those claims without prejudice.
 
 
 
 *
 Honorable John E. Conway, District Judge, United States District Court for the District of New Mexico, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Plaintiff has waived her §§ 1981, 1985, 1986, and 1988 claims. Appellant's Reply Brief at 5. We therefore affirm the district court's grant of summary judgment as to those claims
 
 
 [2]
 The Doyle Braten incident does not support a contrary conclusion. Neither the board nor the District knew about the Braten incident
 
 
 [3]
 28 U.S.C. § 1367 governs exercise of pendent or "supplemental jurisdiction," but only applies to actions commenced on or after December 1, 1990. The present action was filed on November 6, 1990
 
 
 [4]
 The District's argument that the federal claims were not insubstantial because they involved serious child sexual abuse allegations misses the point. The seriousness of the allegations is not the test of whether those allegations are substantial for jurisdictional purposes
 
 
 [5]
 Plaintiff did not mention D.T. until her reply brief and then only incorporated by reference her district court brief which discusses D.T
 
 
 [6]
 Even if the federal claim was substantial, the district court would have had discretion, after considering the appropriate factors, to decline to hear the state law claims