46 F.3d 1152
 129 Lab.Cas. P 57,840
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Charlie TRAFFAS, Plaintiff-Appellant,
v.
BRIDGE CAPITAL CORPORATION, Newmarket Media Corporation, and
Hoyt Goodrich, Defendants-Appellees,
and
Steve ROBERTSON, Pete Schulte, and Sandy Gamblin, Defendants,
v.
Charlie TRAFFAS, Counterclaim-Defendant,
LAKODUK BROADCASTING CORPORATION, Counter-Claimant.
 No. 93-3322.
 United States Court of Appeals, Tenth Circuit.
 Jan. 18, 1995.
 
 ORDER AND JUDGMENT*
 Before BRORBY, SETH, and LAY**, Circuit Judges.
 
 
 1
 This is a diversity suit filed in the United States District Court for the District of Kansas against several Defendants. The Complaint alleges a number of causes of action under Kansas law. These include fraud, interference with contract, defamation, violation of the Kansas Wage Payment Act, and breach of contract. The suit centers on a contract of employment whereby Plaintiff Charlie Traffas was to manage a radio station.
 
 
 2
 The trial court granted the Motions for Summary Judgment of Defendants Hoyt Goodrich, Bridge Capital Investors II, NewMarket Media Corporation, and Sandy Gamblin. Other Defendants were dismissed. Those dismissed included Pete Schulte, Steve Robertson, and Lakoduk Broadcasting Corporation. All claims against all parties were disposed of.
 
 
 3
 Plaintiff has appealed from the summary judgments for Defendants mentioned above.
 
 
 4
 The Plaintiff, Traffas, was hired in August 1988 as station manager for a radio station in Wichita (KICT) by Lakoduk Broadcasting Corporation. He was fired in March of 1990. There had been exchanges of proposed written employment agreements, but no agreement was ever executed. The parties apparently proceeded as if portions of a draft had been agreed upon, but their understanding as to which particular provisions were agreed on was not the same.
 
 
 5
 The record shows that the station's profit expectations were not met, that the management was concerned about how the station sales were handled by Plaintiff, and the low morale of the station sales staff (which included a threat of a work stoppage). There were also reports that Plaintiff had made unauthorized "trades" for his own personal gain. These "trades" were asserted to have been the exchange of station advertising time not for cash but for services by the advertiser's business to Plaintiff. There were extended investigations by the employer of these matters, and it was determined to fire Plaintiff. This was done, but the investigation continued. Based on evidence of "trades" for his personal benefit it was determined that the discharge was "for cause" and that there would be no severance pay or related benefits.
 
 
 6
 There are different causes of action asserted by Plaintiff against different Defendants, all based on or relating to his discharge. The trial court carefully examined the doctrines relating to summary judgments as to each of the parties and the various causes of action. We agree with the court's description of the doctrines, and their application to this suit. The trial court entered an order granting summary judgment for Defendants Hoyt Goodrich and Bridge Capital Investors II, and a separate order granting summary judgment for both NewMarket Media Corporation and Sandy Gamblin.
 
 The Defendants Who Are Appellees Herein
 
 7
 Defendant Hoyt Goodrich was a general partner of Defendant Bridge Capital, a limited partnership which had provided funds to Lakoduk Broadcasting (the employer of Plaintiff) for the station, and which held an option to buy all of Lakoduk's stock. Mr. Goodrich was also a director of Lakoduk Corporation and for a time (December 1989 to October 1990) was its president.
 
 
 8
 Defendant NewMarket was hired by Mr. Goodrich (when president of Lakoduk Corporation) as a management consultant and to "manage" KICT. This was not considered to be a management change as to Plaintiff. Mr. Goodrich apparently thought Plaintiff was then, in December 1989, doing a good job.
 
 
 9
 NewMarket hired, in December of 1989, Defendant Sandy Gamblin to manage the Colorado stations and to "supervise" Plaintiff. She was part of the management consultant entity.
 
 Significant Events
 
 10
 On January 22, 1990 Pete Schulte, president of NewMarket, with Sandy Gamblin visited KICT to meet the management and to review the budget. Apparently they were not satisfied with their interview with Plaintiff and did not think he was "in charge." Also, they instructed him that all third party "trades" had to be approved in writing in advance.
 
 
 11
 In February of 1990 a CPA hired by the consultant NewMarket to examine the KICT financial records was told by a KICT salesperson that Plaintiff had made unusual trades for his own use. The CPA was concerned about these trade transactions and so reported. NewMarket's Sandy Gamblin recommended that Plaintiff be fired, but it was decided to consider the matter further.
 
 
 12
 In March 1990 the KICT sales staff relations with Plaintiff had become so bad that the staff was going to have a work stoppage at a certain date. The NewMarket CPA, mentioned above, was so advised. He told the NewMarket CEO about the problem.
 
 
 13
 In March 1990 the CEO of NewMarket (the consultant) recommended to Mr.Goodrich (the Bridge Capital general partner, director of Lakoduk Corporation, and at times its president) that Plaintiff be fired and explained that the situation was serious. Mr. Goodrich also decided that Plaintiff should be fired and so advised Plaintiff.
 
 
 14
 After the termination of Plaintiff, NewMarket continued to investigate to decide whether the discharge was "for cause." It was so determined that there was just cause in the "trades" and in the serious personnel problems of the sales department. It was thus decided there would be no severance pay for Plaintiff, and he was so informed.
 
 The Causes of Action
 
 15
 The several causes of action can be considered separately as to several of the Defendants.
 
 
 16
 I. Intentional Interference With The Employment Contract
 
 A. NewMarket and Gamblin:
 
 17
 Plaintiff urges that NewMarket Media Corporation and its employee Sandy Gamblin interfered intentionally with the employment contract by their recommendation to the president of Plaintiff's employer that he be discharged. As mentioned above, NewMarket was hired as a management consultant by the employer and Sandy Gamblin was hired to carry out that responsibility and so acted.
 
 
 18
 The authorities hold that in these circumstances the consultant, and its officers and employees, are in the same position as the employer's officials and managers in relation to the employment contract. They are in substance treated, for the purposes under consideration, as parties to the contract and cannot become liable for a privileged interference with the contract. May v. Santa Fe Trail Transportation Co., 370 P.2d 390 (Kan.), holds that such persons are not considered third parties. Thus summary judgment for this claimed interference was a proper resolution as a matter of law. See also Jones v. Intermountain Power Project, 794 F.2d 546 (10th Cir.); Fletcher v. Wesley Medical Center, 585 F.Supp. 1260 (Kan.).
 
 
 19
 There was also no evidence to show there was any malicious conduct by Defendants Gamblin or NewMarket. Turner v. Halliburton Co., 722 P.2d 1106 (Kan.). See also Reazin v. Blue Cross & Blue Shield, 899 F.2d 951, 977 (10th Cir.). The evidence shows these Defendants acted with justification.
 
 
 20
 The showing of Plaintiff's "trades," his excessive exercise of management prerogatives, and the poor financial performance of the station under his direction all demonstrate that the recommendations made for his termination were justified.
 
 
 21
 B. Bridge Capital and Hoyt Goodrich Contract:
 
 
 22
 Plaintiff argues that Defendants Capital and Goodrich cannot contest the employment contract because they are not parties--this requires no further consideration.
 
 II. Kansas Wage Payment Act (K.S.A. 44-315)
 
 23
 Plaintiff seeks to recover from Mr. Goodrich personally for all unpaid "wages." The Act directs that a person as a manager or a corporation "who knowingly permits" the violation "shall be deemed the employer." K.S.A. 44-323(b).
 
 
 24
 The "wages" sought are accrued vacation pay, an incentive bonus, and "notice pay." The basic issue was whether these were due when Plaintiff was fired for cause.
 
 
 25
 The Act provides that employers pay a terminated employee his final wages on or before the next payday. The Act further provides that an officer or agent who has "management" of the corporation who knowingly permits the corporation to engage in such violation shall be deemed the "employer." A good faith belief that the wages are not due negates the "knowingly" requirement. K.S.A. 44-323(b). The trial court found "good faith." See State ex rel. McCain v. Erdman, 607 P.2d 78 (Kan.App.). The case of Benjamin v. Manpower, Inc., 600 P.2d 148 (Kan.App.), does not lead to a different conclusion. It also holds as to the penalty portions of the Act that undisputed evidence will support a conclusion as a matter of law. The Plaintiff presented no evidence on the "knowingly" issue.
 
 
 26
 As mentioned, Mr. Goodrich was president and director of the corporation (Lakoduk Broadcasting Corporation) which employed Plaintiff. We agree with the trial court which concluded that Mr. Goodrich certainly knew of the employment of Plaintiff, but considering his knowledge of the reasons for the firing of Plaintiff, and that he had the advice of his attorney that the termination was "for cause," Mr. Goodrich did not "knowingly" permit the violation of the Act and was not personally liable for the wage claims based on accrued vacation time, a bonus, and "notice pay." Thus under the tentative agreement no "wages" of the type here claimed would be due. Plaintiff does not urge that Defendant Capital has any liability under the Kansas Wage Payment Act.
 
 III. Defamation/Slander
 
 27
 Plaintiff acknowledges that Defendants Goodrich and Bridge Capital did not defame him.
 
 
 28
 The Plaintiff asserted that Defendant Gamblin made defamatory statements to the staff members of his employer about "trade-outs" made by Plaintiff for his personal benefit. However, there was no evidence presented in the affidavits or in responses to interrogatories properly presented within the allotted time to support the assertion that slanderous statements were made.
 
 
 29
 Discovery was concluded on December 15, 1992. Plaintiff sought to submit the affidavit of Ron Shaffer on February 12, 1993 which related to prior extensive discovery, and also sought to supplement his own previous responses to interrogatories.
 
 
 30
 The trial court was correct in striking the late filed supplemental affidavit. In any event, there was no showing of damages as required by state law. See Polson v. Davis, 895 F.2d 705 (10th Cir.), and Gobin v. Globe Publishing Co., 649 P.2d 1239 (Kan.). We do not reach the qualified privilege issue asserted by this Defendant.
 
 
 31
 We must conclude that the trial court properly struck the much belated Shaffer affidavit.
 
 IV. Fraud
 
 32
 Plaintiff asserts that Defendants Goodrich and Bridge Capital made false assurances to him about job security and his job performance.
 
 
 33
 Plaintiff refers to "assurances" made to him in February 1989 at a meeting. We conclude that there were no promises or representations then made.
 
 
 34
 Plaintiff also relies on a meeting in December 1989. The statements then made by Mr. Goodrich were that Plaintiff was doing a good job, and he wanted him to stay on. Apparently Defendant Gamblin felt the same way. Plaintiff was not terminated until March 8, 1990.
 
 
 35
 At the time the asserted representations were made the record shows that Mr.Goodrich did not know about the serious personnel problems at KICT, nor about the poor financial showing, nor about the serious nature of the complaints that Plaintiff was making "trades" for his own benefit. When Mr. Goodrich learned of these factors he acted promptly.
 
 
 36
 The sequence of events and the time that Defendant Goodrich learned of the problems, demonstrates there was then no fraudulent intent not to proceed as before.
 
 
 37
 It is apparent that Plaintiff could not be initially fully informed for legal liability reasons of the reasons for his termination until further investigation was made.
 
 
 38
 Plaintiff relies on the case of Stewart v. Jackson & Nash, 976 F.2d 86 (2d Cir.), on the fraudulent intent issue, but we have before us a summary judgment and not a Rule 12(b) motion. No evidence has been advanced and reliance cannot be placed on the pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242.
 
 V. Punitive Damages
 
 39
 The trial court denied relief to Plaintiff on his claim for punitive damages because no predicate tort claim survived the dismissal of his fraud claim. We agree.
 
 
 40
 The judgments of the District Court are AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable Donald P. Lay, UnitedStates Circuit Judge for the Eighth Circuit, sitting by designation